UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION
www.flsb.uscourts.gov

In Re:

EXCELL AUTO GROUP, INC.

Debtor.
_______________________________/

Case No.: 22-12790-EPK
Chapter 7

NICOLE TESTA MEHDIPOUR,
as Chapter 7 Trustee for Excell Auto Group, Inc.

Plaintiff,

v.

Adv. Pro. No. 24-01254-EPK

LIBERTAS FUNDING LLC, a Connecticut domestic limited liability company, TVT DIRECT FUNDING LLC is a Delaware limited liability company; TVT CAPITAL LLC, a Delaware limited liability company, KINETIC DIRECT FUNDING, LLC a New York Limited Liability Company; RANDY SALUCK, CRAIG PAUL, DAVID WAILL, AND MICHAEL THOMPSON, JESSICA PATROVIC, GARY KATCHER, ANTHONY DIAMOND, ANDREW FELLUS, NOBLE FINANCIAL CORP. d/b/a NOBLE FUNDING, a Florida domestic corporation, MATTHEW COHEN,

Defendants.
_______________________________________/

## SECOND AMENDED COMPLAINT

Nicole Testa Mehdipour, the Chapter 7 Trustee (the "Trustee") for the estate (the "Estate") of Excell Auto Group, Inc. (the "Debtor"), by and through undersigned counsel, sues Libertas Funding LLC ("Libertas"), TVT Direct Funding, LLC ("TVT Direct"), TVT Capital LLC ("TVT Capital"); Kinetic Direct Funding, LLC, a New York limited liability company ("Kinetic"),

Randy Saluck, Craig Paul, David Waill, Michael Thompson, Jessica Petrovic, Gary Katcher, Anthony Diamond, Andrew Fellus, Noble Financial Corp. d/b/a Noble Funding ("Noble Funding") and Matthew Cohen and states as follows:

## I. PARTIES, JURISDICTION AND VENUE

### A. Parties

1. Plaintiff is the duly authorized Chapter 7 Trustee of the Debtor's estate created pursuant to Section 541 of title 11 of the United States Code (the "Bankruptcy Code").

2. Defendant, Libertas is a Connecticut limited liability company with its principal place of business in Connecticut and regularly conducts business in Florida.

3. Defendant, TVT Direct Funding is a Delaware limited liability company with its place of business in Connecticut. Libertas is the principal of TVT Direct Funding. The email address for TVT Direct Funding is randy.saluck@libertasfunding.com.

4. Defendant, TVT Capital LLC is a Delaware limited liability company that is not in good standing with the state of Delaware and provides no registered agent information. TVT Capital filed as a foreign LLC with the State of New York but has not maintained its filings with the State of New York either.

5. Defendant Kinetic Direct Funding, LLC ("Kinetic") is a New York limited liability company which is registered to do business in New York. Kinetic is a wholly owned subsidiary of Libertas and is registered to do business in Connecticut.

6. Randy Saluck is the managing officer and/or member of Kinetic.

7. Kinetic operates as a servicer for Libertas and in that capacity may, from time to time, manage and service the MCA Loans made by Libertas.

8. Defendant, Randy Saluck is an individual who participated in the operations or management as Chief Executive Officer of Libertas and/or TVT Direct Funding.

9. Defendant, Craig Paul, is an individual who participated in the operations or management as the Chief Financial Officer of Libertas and/or TVT Direct Funding.

10. Criag Paul has signed annual reports and other related documents with the state of Connecticut for Kinetic Direct, Libertas and TVT Direct in his capacity as CFO using a Libertasfunding.com email address.

11. David Waill is an individual who participated in the operations or management as the Senior Managing Director-Credit of Libertas and/or TVT Direct Funding. David Wail began his employment with Libertas on October 27, 2020. David Waill works in Connecticut and resides in New York.

12. Jessica Patrovic is an individual who participated in the operations or management as Vice President, Chief of Staff, Head of Customer Experience at Libertas. Jessica Patrovic works in Connecticut.

13. Gary Katcher is an individual who participated in the operations or management as founder and Executive Chairman at Libertas. Gary Katcher works in Connecticut.

14. Michael Thompson is an individual who participated in the operations or management as Senior Managing Director of Credit, Head of Underwriting of Libertas. Michael Thomspon works in Connecticut and resides in New York.

15. Noble Financial is a loan broker as defined under Fla. Stat. § 687.14.

16. Matthew Cohen is an individual and participated in the operations or management as the President of Noble Funding and facilitated the transaction between Libertas and Scott Zankl and/or Excell.

17. Anthony Diamond is an individual and, at all times relevant, participated in the operations or management of TVT Capital, LLC as an Underwriting Department Manager.

18. Andrew Fellus is an individual and, at all times relevant, participated in the operations or management of TVT Capital, LLC as the Chief Executive Officer of TVT Capital, LLC.

19. Warren Fellus is an individual and, at all times relevant, participated in the operations or management of TVT Capital, LLC as Managing Partner of TVT Capital.

### B. Jurisdiction and Venue

20. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1334(b).

21. This action involves core and non-core causes of action pursuant to 28 U.S.C. § 157 (b)(2)(A) and (O).

22. This Court has subject-matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1331 based on Plaintiff's claims for violations of the Racketeer Influenced and Corruption Organizations Act, 18 U.S. C. §§ 1961–68 ("RICO").

23. The Court has subject-matter jurisdiction over Plaintiff's state-law claims because they are so related to Plaintiff's federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

24. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

25. The Plaintiff consents to the entry of a final judgment by this Court on all counts in this Complaint.

## GENERAL FACTUAL ALLEGATIONS

### A. History of the Debtor

26. The Debtor is a Florida corporation with its principal business in Boca Raton, Florida.

27. The Plaintiff asserts that the Debtor did not enter into the Libertas MCA Loan or the TVT MCA Loan because Scott Zankl executed both MCA loans without the knowledge or consent of Kristen Zankl and/or Ed Brown.

28. In executing each of the MCA Loans, Scott Zankl was acting outside of his corporate authority.

29. To the extent that the Court finds that the Debtor entered into either of the MCA loans described below, the Plaintiff asserts that, for the reasons set forth below, both of the MCA loans were criminally usurious loans under New York and Florida law.

30. The Plaintiff asserts that the Libertas MCA Loan, Libertas MCA Loan arbitration agreement, transfers of the Debtor's property to Libertas, the TVT MCA Loan, the TVT MCA Loan arbitration agreement, and the transfers of the Debtor's property to TVT Direct, TVT Capital, and/or Libertas all should be deemed *void ab initio* or *void in future*.

31. Debtor was formed for the stated purpose of selling high-end luxury vehicles primarily to end users.

32. Scott Zankl, who at all relevant times, was not an owner of the Debtor, was primarily responsible for running the day-to-day operations of the Debtor.

33. On April 8, 2022, a voluntary petition for relief under chapter 7 of the Bankruptcy Code.

**(i) <u>The Debtor Effectively Ceases Operations and is Operated as a Ponzi Scheme by Scott Zankl by No Later than May 2021</u>**

34. No later than May of 2021, Scott Zankl caused the Debtor to essentially cease being in the business of buying and selling high-end luxury vehicles to end users. The Debtor engaged

in relatively minor transactions whereby the Debtor sold vehicles to retail end users and instead sold vehicles to Karma of Palm Beach, Karma of Broward, or Auto Wholesale of Boca Raton, often at cost or a loss.

35. No later than May 2021, Scott Zankl caused the Debtor to primarily engage in borrowing money and using the proceeds from the increased loans to repay pre-existing loans and keep the pre-existing lenders from taking legal action against the Debtor and to fund Mr. Zankl's lifestyle.

36. No later than May 2021, Scott Zankl operated the Debtor as a Ponzi scheme to the financial detriment to the Debtor, its shareholders and creditors.

37. The Debtor obtained loans from the following: (a) Private Lenders; (b) Merchant Cash Advance lenders; (c) Floor Plan lenders; (d) Ed Brown; (e) Karma of Palm Beach and/or Karma of Broward. Scott Zankl continuously sought increased and additional funding from these and other lenders, including an overseas lender, and through more traditional financing companies, through the Petition Date.

**(ii) <u>The Private Investor Loan Scheme</u>**

38. At least as early as 2015, a Private Investor Loan scheme was created with wealthy individuals ("<u>Private Lenders</u>"). Two basic programs were created to document these Private Investor Loans which were the "Locate Deal" program and the "Wholesale Deal" Program.

39. Both the Locate Deal and the Wholesale Deal programs had the same basic premise: Scott Zankl indicated that the Debtor found a willing and qualified buyer for a specific high-end luxury vehicle which was not currently in the inventory of the Debtor. The Debtor had located the specific high-end luxury vehicle that the willing buyer wanted to purchase at an agreed upon price. The Debtor needed a loan from the Private Lender to purchase specific high-end luxury vehicle.

The Private Lender agreed to fund the loan. The gross profits of the sale would be split, in most cases, equally between the Private Lender and the Debtor with a closing to take between 7-60 days.

40. However, the funds received from the Private Lenders were not used for the purchase of a specific high-end luxury vehicle, but rather were treated as unsecured loans.

41. Reports were generated for each Private Lender of their loans, some of which included the year, make, model, and Vehicle Identification Number. However, the vehicles listed in these reports were for vehicles previously purchased and sold by the Debtor. Some of the reports issued by Scott Zankl had the same vehicle more than once with sale dates that made it impossible for the vehicle to be sold, repurchased, and sold again. Some of the reports provided by Scott Zankl to Private Lenders contained the names of other Private Lenders.

42. In reality, the Private Lenders were being paid closer to a fixed rate of return rather than based upon actual profits of the purported sales of the specific high-end luxury vehicles reflected in the various reports issued by Scott Zankl.

43. Based upon the high rates of return, new Private Lenders approached Scott Zankl offering additional Private Investor Loans provided the new Private Investors received high rates of returns.

**(iii) Merchant Cash Advance Loans as a Source of Funding to Prop Up the Ponzi Scheme**

44. Merchant Cash Advance ("MCA") lenders are lenders of last resort, and for many borrowers, MCA loans are often the death knell of a borrower/business.

45. MCA lenders attempt to disguise the MCA agreements, which are in fact loans, as the purchase of receivables or future revenue streams.

46. MCA lenders use the false guise of purchases of receivables or future revenue streams to shield themselves from state usury laws.

47. Scott Zankl also caused the Debtor to borrow funds from MCA lenders to perpetuate the Ponzi scheme. MCA lenders, such as Libertas and TVT Direct, loan money at very high rates of interest, generally exceeding most states' criminal usury laws and attempt to avoid usury laws by disguising the agreement as a purchase of future receivables or receipts.

48. MCA lenders perform perfunctory, if any, due diligence when funding an MCA loan because the business model is front loaded with fees, etc., thereby limiting the MCA's exposure to the failing debtor.

49. At least as early as September 30, 2020, Scott Zankl caused the Debtor to enter into agreements with MCA lenders. The first was with Libertas Funding described below.

50. The Debtor's success in paying back the Libertas Funding resulted in the Debtor receiving additional offers from other MCA lenders. This allowed the Debtor to use the loan proceeds from the MCAs to pay back pre-existing loans while simultaneously attracting new financing to further the Ponzi Scheme.

51. Scott Zankl was acting outside of his scope of authority in executing the MCA Loans.

52. The perfunctory due diligence of the MCA lenders is typically limited to a review of a debtor's bank records prior to consummating and funding an MCA loan. A review of the bank statements for the Debtor, even as early as September of 2020 would reveal that the Debtor was propping up the company through multiple Private Investor Loans and insufficient unencumbered inventory to generate sufficient revenues from the sale of vehicles to generate the required Future Receipts.

53. Scott Zankl continued to seek out new financing all the way through the collapse of the Debtor and the filing of the instant bankruptcy case. With each of the new loans, Scott Zankl used the funds to pay preexisting obligations.

54. Scott Zankl was acting outside of the scope of his authority when he caused the Debtor to borrow money from third parties, including the Private Lenders and the MCA Lenders, at all times relevant to this complaint.

**B. Noble Financial is a Loan Broker that Connected the Debtor with Libertas and TVT Direct and/or TVT Capital which are Predatory Merchant Cash Advance Lenders**

55. In or around August 2020, Matthew Cohen, from Noble Funding contacted Scott and discussed a loan. In a follow up email with Scott, Matthew Cohen, on August 31, 2020, stated as follows:

> Good news. I spoke with the lender in New York, and they said your industry type is not a deal killer. Please see attached our application. Underwriting requires the form be typed, so please type right into the form on the computer, then print out to sign/date in ink. Just ignore credit card section. I need 51%+ ownership, so if that's more than just you, please send application for them as well. Send back along with the items below and I will get everything applied. Thanks Scott. -Most recently filed corporate tax return (2019 or 2018)-2019 year-end P&L and balance sheet-2020 YTD P&L and balance sheet (most recent)-Last 6 months business bank statements (all pages February-July, or March-August after Monday) -Personal financial statement for you and your wife

56. In a follow up email on September 1, 2020, Matthew Cohen stated as follows:

> Hi Scott,
>
> I got a few emails from you yesterday. Just missing our application (attached) and the items below. Underwriting requires the form be typed, so please type right into the form on the computer, then print out for your wife to sign/date in ink. Just ignore credit card section. Thanks Scott.
>
> -2019 year-end P&L and balance sheet
> -2020 year to date P&L and balance sheet

-August month-end bank statement from Chase

57. On September 1, 2020, at 3:00 pm, Matthew Cohen sent an email stating that the "**Noble Funding No Collateral Application**" needed to be signed and told Scott Zankl, "**You can sign as your wife if she's not around.**" (emphasis added). The September 1, 2020, at 3:00 pm email is attached as **Exhibit A**.

58. On September 1, 2020, at 3:23 pm Scott Zankl sends an email back to Matthew Cohen with the Noble Funding Business Loan Cash Advance Form completed with it purportedly being signed by Kristen Zankl. A copy of the September 1, 2020, at 3:23 pm is attached as **Exhibit B**.

59. On September 17, 2020, at 11:08 am, Matthew Cohen sent another email stating, as follows:

> Hi Scott,
>
> I got a call yesterday evening saying the lender in NYC passed. The owner made the decision, and the BDO working on it over there agreed with me that there was no way he wasn't getting paid back in full and on time. I think it just came down to the industry type as everything else about your business and personal financial situation is a green light special. I do have other options, and I want to keep working on this for you assuming the feeling is mutual. Please call me later to discuss. 634-7433. Thanks Scott.

60. After Scott Zankl provided Matthew Cohen additional information requested by Matthew Cohen, on September 29, 2020, at 12:44 pm, Matthew Cohen sent the following email:

> Hi Scott,
> I have the 3 offers below. They are preliminary but should be accurate. If I go to $1 million, or a longer term, the rates go higher. Each of these are 20% cash on cash or slightly below. If you needed more in the next month or two, I can probably get you another $500K over 7-8 months at similar rates. Let me know which one you select and I can get the offers finalized. I would recommend the 8 month option to keep the payments more manageable. Thanks Scott.

> <u>6 Month Term</u>
> Amount: $500,000
> Weekly payment: $24,375
> Total re-payment: $585,0007
>
> <u>7 Month Term</u>
> Amount: $500,000
> Weekly payment: $20,323.15
> Total re-payment: $597,5008
>
> <u>8 Month Term</u>
> Amount: $500,000
> Weekly payment: $18,750
> Total re-payment: $600,000

A copy of the September 29, 2020, at 12:44 email is attached as **Exhibit C**.

61. On September 29, 2020, at 1:03 pm, Matthew Cohen represented that the payments in the preliminary offers included both principal and interest.

62. On September 30, 2020, Matthew Cohen sends an email to Scott Zankl which, includes a draft of a Libertas MCA Loan agreement dated September 30, 2020 and IRS forms 8821 for the Debtor and Kristen Zankl, states as follows:

> Hi Scott,
>
> Please see attached two 8821 forms and the contract. The 8821 forms are just to verify that historical tax returns have been filed. Page 2 of the contract has the early payoff discounts. I have listed them below. It's such a short term, 8 months, it almost makes more sense to just let it run out over 8 months. Maybe in the 60-90 bucket you pay it back, then you save $20,000. After that, I would just let it run. Saving $5,000 doesn't move the needle and you would be better served just having that extra cash in your operating account. There is a 2% closing fee, so you will net $490,000. All these groups charge a fee between 2%-4%.
>
> If paid back within the first 30 days, total re-payment of $560,000
> If paid back within the first 60 days, total re-payment of $570,000
> If paid back within the first 90 days, total re-payment of $580,000
> If paid back within the first 120 days, total re-payment of $595,000
>
> Kristen will sign twice on page 12, and twice again on page 13. There are 4 other entities they found associated on page 13. Let me know which ones

> need to be removed and I'll get them removed for you. Call my cell with any questions. Thanks Scott.

63. On October 2, 2020, Matthew Cohen sends an email to Scott Zankl stating:

> We are good for the weekly payment and there will be an addendum in the contract which states they will not
> file a UCC unless in event of default. Thanks Scott.

64. On October 5, 2020, Matthew Cohen sends an email to Scott Zankl including an unsigned copy of a Libertas MCA Loan agreement dated October 2, 2020, and instructing Scott to obtain the signatures of Kristen Zankl. Further, Matthew Cohen indicates he will provide more "housekeeping items needed for a complete package."

65. On October 5, 2020, Matthew Cohen sends an email to Scott Zankl stating as follows:

> Hi Scott,
>
> Below is the rest of what we need. After that, there is a view-only bank log-in on day of funding (most likely tomorrow). All the lenders in the space do this to ensure there is a positive balance in the operating account and the business hasn't taken any other competitor funding in October. They will also have you do a virtual site visit where you walk them around during Facetime, maybe show them a few cars, etc. Last is an interview and funding call which usually lasts 15-20 minutes. Please call or email me with any questions or comments. Thanks Scott.
>
> -September 2019-February 2020 business bank statements (to complete a full year)
> -September 2020 merchant processing statement
> -Inventory sheet and copy of existing titles
> -4 trade references (company name, name, phone) **They mention nothing about borrowing**
> -Lease agreement with last 2 months paid rent checks or show me on bank statements where the debits occur
> -A/R and A/P aging reports (if you have no A/R, just payables if any)
> -Please Provide details on LAWSUIT FILED ON 8/21/2020 United Community Banks VS Excell Auto Groups

66. On October 5, 2020, Matthew Cohen sent an email to Scott Zankl stating as follows:

> Good news. They waived the need for title copies, inventory report, and aging reports. The rest you said we can do. Feel better and speak soon. Thanks Scott

67. Matthew Cohen, through a series of emails, obtains financial information regarding the Debtor and submits the information to Libertas.

68. On January 19, 2021, Matthew Cohen, at the request of Scott Zankl, obtained a payoff letter from Libertas and emails it to Scott Zankl. On the same day, Matthew Cohen obtains and provides Scott Zankl with a payment history from Libertas.

69. On January 26, 2021, Scott Zankl emailed Matthew Cohen requesting an explanation as to why Libertas took out three payments from Excell. On January 26, 2021, Matthew Cohen forwarded an email from Jessica Petrovic, Chief of Staff, Director of Customer Service for Libertas, an explanation that there were returned payments and the payments were re-run.

**(i) <u>Libertas MCA Loan</u>**

70. On or about October 2, 2020, an Agreement of Sale of Future Receipts was created ("**Libertas MCA Loan**"). A true and correct copy of the Libertas MCA Loan is attached as **Exhibit D**.

71. According to Scott Zankl, the Libertas MCA Loan was not signed by Kristen Zankl, but Scott Zankl affixed Kristen Zankl's name to the Libertas MCA Loan with the knowledge of Libertas or its agents. Kristen Zankl did not provide Scott Zankl with authorization to sign the Libertas MCA Loan on her behalf, individually or as owner of the Debtor. Scott Zankl did not sign his own signature to the Libertas MCA Loan.

72. Paragraph 58 of the Libertas MCA Loan contains an arbitration provision.

73. The Debtor had a right to sue in court which is a property right under both New York and Florida law. A wavier of that right was a transfer of an interest in property.

74. Paragraph 59 of the Libertas MCA Loan contains the ability for any party to opt out. Kristen Zankl, as owner and president, of the Debtor was not aware of the Libertas MCA Loan, the Debtor did not have an opportunity to review the Libertas MCA Loan, including the arbitration provisions. The Debtor, therefore, was not provided with an opportunity to opt out of the Arbitration provision.

75. Paragraph 46 of the Libertas MCA Loan states that the Debtor should have an opportunity to review the Libertas MCA Loan with an attorney. Since, Kristen Zankl, the owner and the president, was unaware of the execution of the MCA Loan, the Debtor did not have an opportunity to review the Libertas MCA Loan with an attorney.

76. The Debtor, and one or more of the parties to the Libertas MCA Loan did not have the opportunity to opt out of the Arbitration provision.

77. The Trustee does not have a counter-signed version of the Libertas MCA Loan

78. The Libertas MCA Loan defines Future Receipts as:

> "[a]ll sums due to Merchant by its customers/clients/vendors as payment for Merchant's sale of good and services in the ordinary course of Merchant's entities from and after the date when the Purchas Price is paid to Merchant irrespective of how such sums is paid over and delivered to Merchant (In the form of chase, check, credit, credit card charge, debit card payment, ACH or any other form of funds transfer or payment).

Ex. D, p. 2.

79. Pursuant to the Libertas MCA Loan the "Merchants" are represented to have $5,962,216.13 in Future Receipts. Ex. D, p. 2.

80. Pursuant to the Libertas MCA Loan, the Debtor was to receive $490,000.00 and was obligated to pay back to Libertas $600,000.00. Ex. D, p. 2.

81. Although the Libertas MCA Loan states that the "Estimated Term of this Agreement is 8 months," based upon the total substance of the Libertas MCA Loan, the entire balance was absolutely due no later than 8 months after funding. Ex. D, p. 2. Daily payments of $3,571.43 were required under the Libertas MCA Loan. Ex. D, p. 2.

82. The transfers of the Debtor's property to Libertas are set forth on **Exhibit E**

83. On October 8, 2020, Libertas transferred $490,000.00 to the Debtor.

84. Between October 9, 2020, and June 11, 2021, the Debtor made daily payments of $3,571.42 which totaled $600,000.00.

85. Kinetic Direct Funding LLC is listed as a Servicing Agent. Ex. D. p. 3.

86. The risk that Future Receipts will become uncollectable from the Debtor's customers never shifts to Libertas. In Paragraphs 14-15 of the Libertas MCA Loan, the focus of risk is on the business operations of the Debtor rather than the ability to collect from the customer. Ex. D. p. 5.

87. In substance, the Libertas MCA Loan is a loan under New York law.

88. Even after the Libertas MCA Loan was signed, Matthew Noble and Noble Funding continued to service the loan for Libertas.

**(ii) <u>TVT MCA Loan</u>**

89. TVT Direct filed POC No. 10 in the amount of $893,614.02. A copy of the TVT Direct POC is attached as **Exhibit F**.

90. In or around December 13, 2021, TVT Capital began discussions with Scott Zankl regarding entering into one or two merchant cash advance agreements.

91. On December 14, 2021, a meeting was set up for an interview between Scott Zankl and Anthony Fellus from TVT Capital, LLC along with individuals with the following email addresses: smoo@tvtcapital.com, jeff@tvtcapital.com, bgudin@tvtcapital.com, and gikhilov@tvtcapital.com. As part of this meeting, TVT Capital, LLC requested Scott Zankl to provided certain documents from the Debtor and "all Karma Locations and HQ."

92. Also on December 14, 2021, TVT Capital LLC requested Scott Zankl and Kristen Zankl complete IRS Forms 8821 and TVT Capital LLC provided the TVT MCA Agreement, TVT Weekly Addendum, and the TVT Purchased Amount to the Debtor via email.

93. With an effective date of December 14, 2021, an "Agreement for the Purchase and Sale of Future Receipts" is purportedly electronically signed by Scott and Kristen Zankl. ("**TVT MCA Loan**"). A true and correct copy of the TVT MCA Loan is attached as **Exhibit F**. The TVT MCA Loans states a "Purchase Price of $1,000,000.00" and a "Purchased Amount of $1,430,000.00." Ex. F, p. 5. The Debtor was obligated to pay $39,722.22 per week. Ex F, p. 20.

94. The TVT MCA Loan was not signed by Kristen Zankl. Without the authorization of Kristen Zankl, Scott Zankl electronically signed Kristen Zankl's signature in her capacity as president of the Debtor.

95. The TVT MCA Loan was electronically signed by Randy Saluck on behalf of TVT Direct. While TVT Direct is identified as the "Buyer," the TVT MCA Agreement is on TVT Capital letterhead and TVT Capital LLC is listed in the Electronic Record and Signature Disclosure portion of the TVT MCA Loan. Ex. F. p. 5, 19-21.

96. Libertas, TVT Direct, and/or TVT Capital and/or their respective agents knew or should have known that Kristen Zankl did not electronically sign the TVT MCA Loan.

97. Scott Zankl states that Libertas, TVT Direct, and/or TVT Capital and/or their respective its agents knew, and did not care, that the documents were not signed or authorized by Kristen Zankl.

98. Further, on the DocuSign Certificate of Completion for the TVT MCA Loan, the IP addresses for both Scott Zankl and Kristen Zankl are the same. The time stamps are both on December 14, 2021, at 11:35:21 for Scott Zankl and at 11:39:20 am for Kristen Zankl.

99. The TVT MCA Loan contains an arbitration provision. The Arbitration provision requires that there be separate arbitrations for each individual and cannot consolidate claims of multiple parties. Ex. F, ¶¶ 28 and 28.1-28.4.

100. The Debtor had a right to sue in court which is a property right under both Florida and New York law. A wavier of that right was a transfer of an interest in property.

101. The Debtor has the right to opt out of the arbitration in writing within 30 days after the Debtor signs the Agreement. Ex. F, ¶ 28.4. The Debtor did not sign the TVT MCA Loan.

102. The TVT MCA Loan contains a provision that in the event that the Class Action waiver is determined to be invalid or unenforceable, then the entire Arbitration Agreement is void. Ex. F. ¶ 28.3

103. Scott Zankl was not an owner of the Debtor. Scott Zankl did not have the authority to bind the Debtor to the TVT MCA Loan.

104. The TVT MCA Loan arbitration provision is invalid because the terms were not agreed to by the Debtor, the Debtor did not have the opportunity to opt out, the class action waiver is void under New York law because the TVT MCA Loan is a criminally usurious loan which, in turn, voids the arbitration agreement.

105. The transfers of the Debtor's property to TVT Direct and/or TVT Capital are set forth in **Composite Exhibit G**. The payments set forth on Exhibit G were collected by TVT Capital and/or TVT Direct Funding.

106. The Libertas MCA Loan and the TVT MCA Loan (collectively "**MCA Loans**") include New York choice of law provisions.

107. On December 14, 2021, Andrew Fellus, the CEO of TVT Capital, provided confirmation of the wire transfer to the Debtor of the advance of the "Purchase Price" less the "Origination Fee" made pursuant to the TVT MCA Loan.

108. On January 13, 2022, Anthony Diamond, Underwriting Manager for TVT Capital, with a copy to Andrew Fellus, sent an email to the Debtor seeking to collect on the debt under the TVT MCA Loan. In fact, there are additional emails from Anthony Diamond seeking to collect the debt on the TVT MCA Loan.

109. Warren Fellus, Managing Partner for TVT Capital, sent numerous emails and/or text messages to the Debtor in an attempt to collect on the TVT MCA Loan.

**C. The MCA Loans are Loans under New York Law**

110. Libertas is an MCA lender that attempted to shield itself from state usury laws by drafting the Libertas MCA Loan as purchases of "Future Receipts."

111. TVT Direct and TVT Capital are MCA lenders that attempted to shield themselves from state usury laws by drafting the TVT MCA Loan as a purchase of "Future Receipts."

112. The substance of both MCA loans demonstrates that each is a loan under both New York and Florida law.

Libertas is the principal of TVT Direct.

**(i) The Debtor was Forced to be in Immediate Default under each of the MCA Loans**

113. Libertas prepared and required the use of their respective form agreements be used by the Debtor.

114. TVT Direct and/or TVT Capital prepared and required the use of their respective form agreements by the Debtor.

115. Libertas included specific representations and warranties that Libertas knew or should have known, were false upon the execution of each contract based upon the due diligence each purportedly conducted.

116. Libertas intentionally drafted the MCA Loan to ensure that the Debtor was in immediate default under the terms of each of the MCA Loan.

117. Libertas knew or should have known that the Debtor would be in immediate default under the MCA Loan.

118. TVT Direct and/or TVT Capital included specific representations and warranties that TVT Direct and/or TVT Capital knew or should have known, were false upon the execution of each contract based upon the due diligence each purportedly conducted.

119. TVT Direct and/or TVT Capital intentionally drafted the MCA Loan to ensure that the Debtor was in immediate default under the terms of the MCA Loan.

120. TVT Direct and/or TVT Capital knew or should have known that the Debtor would be in immediate default under each of the MCA Loan.

121. The Libertas "Events of Default" and Protections ae set forth in the Libertas MCA Loans. Ex. D, p.8-9.

122. The TVT "Events of Default and Protections are set forth in the TVT MCA Loan. Ex. F, p. 9

123. All the MCA Loans required the Debtor to make representations as to the amount of the Future Receipts at the time of the execution of each of the MCA Loans.

124. A public records search would have revealed the existence of other secured creditors.

125. Between June 14, 2017, and March 25, 2021, Seaside National Bank & Trust had a blanket lien on all the Debtor's accounts receivables and inventory, including vehicles.

126. Commencing on July 2, 2020, Nextgear Capital had a UUC-1, a floor plan lender, had a lien on, in part, all the Debtor's inventory, purchase money inventory, and account's receivables.

127. Commencing on November 19, 2021, WestLake Flooring Company, LLC, a floor planner, had a UCC-1 filing on all Karma of Palm Beach's assets, including but not limited to inventory, purchase money inventory and accounts receivables.

128. All the MCA Loans required that the Debtor not have any other MCA loans.

129. At the time that the TVT MCA Loan was entered, the Debtor had multiple MCA loans, including to Austin Business Finance and Spin Capital LLC.

130. A review of the Debtor's bank accounts would have revealed the existences of the other MCA loans.

131. All the MCA Loans required the use of a single bank account. The Debtor had multiple accounts and the inclusion of the separate legal entities as "Merchants" precluded compliance with such a provision, especially where the Debtor's records did not evidence the other entities' business taking place through its accounts, ensured that the Debtor was in immediate default.

132. There were insufficient unencumbered accounts receivable and inventory to support the good faith estimate. Instead, there MCA Loans were underwritten based purely on cash coming through the bank accounts.

133. No assignment documents were ever requested or issued transferring ownership of the purported Future Receipts to Libertas.

134. No assignment documents were ever requested or issued transferring ownership of the purported Future Receipts to TVT Direct and/or TVT Capital.

135. In each of the MCA Loans, the Debtor is required to consent to a blanket UCC lien rather than one more narrowly tailored focused on the purportedly purchased Future Receipts.

**(ii) Libertas and TVT Direct/TVT Capital Maintained Sole Discretion Regarding Adjustments to the Remittance Amount and Repayment was Over a Fixed Period of Time**

136. Each of the MCA Loans contains a reconciliation provision.

137. The Debtor forfeits its absolute right for reconciliation upon it being in default.

138. The Debtor was in default immediately upon entering into each of the MCA Loans, so that the Debtor's obligation to repay the loan was based upon a fixed time frame.

139. Under New York law, the Debtor's right to reconcile must be absolute and not at the option of the lender.

140. Further, the reconciliation provision in the MCA Loans was only available on a retroactive basis and if the Debtor was unable to continue the payments while the Libertas and/or TVT Direct/TVT Capital processed the reconciliation request, then the Debtor would forfeit its ability for reconciliation.

141. At all times, the risk that the "Future Receipts" purportedly purchased by Libertas never actually shifted from the Debtor to Libertas.

142. A review of the substance of each of the MCA loans demonstrates that in the event of a default or non-payment, the remedies were focused on the Debtor and guarantors rather than the Debtor's customers.

143. At all times, the risk that the "Future Receipts" purportedly purchased by TVT Direct never actually shifted from the Debtor to TVT Direct/TVT Capital.

144. Absent a valid choice of law provision, under New York's center of gravity test, Florida law should apply to each of the MCA Loans because the most significant contacts with respect to the matters in dispute are in Florida.

145. Each of the MCA Loans were loans and were intended to charge more than 2 times the criminal rate of usury under applicable New York or Florida law.

146. Libertas willfully and knowingly charged, took, or received interest in excess of the maximum amount allowed under New York and/or Florida law.

147. TVT Direct/TVT Capital willfully and knowingly charged, took, or received interest in excess of the maximum amount allowed under New York and/or Florida law.

148. Libertas willfully and knowingly engaged in the collection of unlawful debt by charging and collecting interest in excess of 50 percent, twice the amount of criminal usury statutes under both Florida and New York law.

149. TVT Direct/TVT Capital willfully and knowingly engaged in the collection of unlawful debt by charging and collecting interest in excess of 50 percent, twice the amount of criminal usury statutes under both Florida and New York law.

**(iii) Libertas, TVT Direct, and TVT Capital are a single Economic Unit and Jointly and Severally Liable**

150. Libertas, TVT Direct, and TVT Capital are a single economic unit.

151. For the TVT MCA Loan, Proof of Claim No. 10 was filed by Jessica Patrovic with a Libertas Funding email address, on behalf of TVT Direct, and identified "Libertas Funding LLC" as "other names the creditor used with the debtor." Ex. F.

152. The TVT MCA Loan was drafted on a TVT Capital form agreement, with TVT Direct substituted as the "Buyer." The Debtor communicated with Andrew Fellus and others from TVT Capital, not TVT Direct, prior to executing with TVT MCA Loan.

153. Andrew Fellus confirmed the wire of the funds advanced pursuant to the TVT MCA Loan, and Andrew Fellus, Warren Fellus, and Anthony Diamond, all with TVT Capital communicated with the Debtor to collect the TVT MCA Loan.

## COUNT 1
## DECLARATORY RELIEF

154. Plaintiff realleges paragraphs 1 through 153 above and incorporates those allegations by reference.

### A. Common Allegations to Both the Libertas MCA Loan arbitration agreement and the TVT MCA Loan arbitration agreement

155. 28 U.S.C. § 2201 authorizes this Court to issue declaratory relief.

156. Neither the Libertas MCA Loan documents nor the TVT MCA Loan documents were authorized or signed by Kristen Zankl.

157. Scott Zankl signed or caused someone else to sign the name of Kristen Zankl without Kristen Zankl's knowledge or consent.

158. Scott Zankl was operating outside of the scope of his authority at the time that he executed the Libertas MCA Loans and the TVT MCA Loans.

159. Therefore, the Debtor did not agree to the arbitration provisions nor where they agreed to by the co-debtor co-borrowers and guarantors. There was no meeting of the minds as to the arbitration provision.

**B. <u>Libertas MCA Loan arbitration agreement</u>**

160. Plaintiff seeks a determination that the arbitration provision in the Libertas MCA Loan is void or voidable.

161. The Libertas MCA Loan arbitration agreement is void or voidable because the Debtor did not consent to the arbitration provision.

162. The Libertas MCA Loan arbitration agreement contains the ability for the Debtor to opt out of the arbitration agreement. Ex. D, pp. 10-11. The Debtor was not provided sufficient notice to opt out of the arbitration provision and the Debtor was deprived of its ability to have an attorney review the arbitration provision.

163. The arbitration agreement should be deemed void because the Libertas MCA Loan arbitration agreement is void because it is used to enforce a criminally usurious loan under New York or Florida law.

164. The arbitration agreement should be deemed void or voidable as it was the result of an actual or constructively fraudulent transfer of a property right.

165. Plaintiff seeks a determination that if the arbitration agreement in the Libertas MCA Loan was not void or voidable, the provision was waived.

166. According to the Proof of Claim filed by TVT Direct, Libertas is the listed as "Other names that the creditor used with the debtor." [POC No. 10-1].

167. TVT Direct sued the Debtor and other defendants on April 7, 2022, in Kings County Supreme Court, Kings County, New York, Case number 0510223/2022 or 510223/2022.

The Complaint was filed and processed on April 7, 2022. The filing of the lawsuit by TVT Direct Funding constitutes a waiver of the arbitration provision.

168. To the extent that Libertas and TVT Direct are the same entity, Libertas waived the arbitration provision.

169. Further, Libertas waived the right to arbitrate by failing to object to this Court entering final orders as required in this Court's Order Setting Scheduling Conference and Establishing Procedures and Deadlines. [ECF No. 3].

170. If the arbitration provision in the Libertas MCA Loan is valid and was not waived, then the Plaintiff seeks a determination that the enforcement of the arbitration provisions would inherently conflict with the underlying purposes of the Bankruptcy Code.

**C. <u>TVT Direct Loan arbitration agreement</u>**

171. Plaintiff seeks a determination that the arbitration provision in the TVT MCA Loan is void or voidable.

172. Plaintiff seeks a determination that if the arbitration provision in the TVT MCA Loan was not void or voidable, the provision was waived.

173. The TVT Direct arbitration agreement contains the ability for the Debtor to opt out of the arbitration agreement. Ex. F [ECF No. 1-6, pp. 8-9]. The Debtor was not provided sufficient notice to opt out of the arbitration provision and the Debtor was deprived of its ability to have an attorney review the arbitration provision.

174. The arbitration agreement should be deemed void because the TVT MCA Loan arbitration agreement is void because it is used to enforce a criminally usurious loan under New York or Florida law.

175. The arbitration agreement should be deemed void or voidable as it was the result of an actual or constructively fraudulent transfer of a property right.

176. Plaintiff seeks a determination that if the arbitration agreement in the TVT MCA Loan was not void or voidable, the provision was waived.

177. TVT Direct sued the Debtor and other defendants on April 7, 2022, in Kings County Supreme Court, Kings County, New York, Case number 0510223/2022 or 510223/2022 to enforce the TVT MCA Loan. The Complaint was filed and processed on April 7, 2022. The filing of the lawsuit by TVT Direct Funding constitutes a waiver of the arbitration provision.

178. Further, TVT Direct waived the right to arbitrate by failing to object to this Court entering final orders as required in this Court's *Order Setting Scheduling Conference and Establishing Procedures and Deadlines* [ECF No. 3].

179. If the arbitration provision in the TVT MCA Loan is valid and was not waived, then the Plaintiff seeks a determination that the enforcement of the arbitration provisions would inherently conflict with the underlying purposes of the Bankruptcy Code.

180. The TVT MCA Loan specifically provides that the arbitration provision is void if the class action waiver is void or voidable.

181. The class action waiver is void under New York law, because the TVT MCA Loan is a loan that charges more than twice the legal rate allowable under New York law.

182. The class action waiver is void, because the Debtor did not agree to the arbitration agreement and was not given the right to opt out of the arbitration provision.

183. The TVT MCA Loan arbitration provision should be declared to be invalid and unenforceable. As such, the arbitration provision declares the arbitration provision to be void.

**D. Enforcement of the Arbitration Agreements would Inherently Conflict with the Underlying Purposes of the Bankruptcy Code**

184. The Trustee asserts causes of action that seek to void the obligations and transfers under the Libertas MCA Loan, Libertas MCA Loan arbitration agreement, transfers of property to Libertas, TVT MCA Loan, Libertas MCA Loan arbitration agreement, transfers of property to TVT Direct, TVT Capital and/or Libertas under her statutory authority which derives from the creditors in this case, who are not parties to the arbitration agreements, under various actual and constructive fraud theories that are not subject to arbitration.

185. The enforcement of the arbitration provisions would inherently conflict with the underlying purposes of the Bankruptcy Code. The Plaintiff would be required to engage in separate arbitration for the Libertas MCA Loan and the TVT MCA Loan as these are two separate agreements with different arbitration provisions. The TVT MCA Loan arbitration provision prohibits the consolidation of multiple parties and requires "Binding Individual Arbitration" which could lead to conflicting results involving the same basic subject matter. Ex. F, ¶ 28 and 28.1. This Court is familiar with the underlying issues between the Debtor and various Merchant Cash Advance companies. Further, the Plaintiff has brought substantial claims under her statutory authority seeking to avoid the obligations, including the arbitration provisions, and payments as being fraudulent based upon various theories of constructive and actual fraud theories that an arbitrator would have little to no experience in handling. The delay and increased expenses would be detrimental to the creditors in this bankruptcy estate. Further, TVT Direct and Libertas are engaging in improper forum shopping.

**WHEREFORE,** the Plaintiff respectfully requests entry of a final judgment in favor of the Plaintiff and against Libertas, TVT Direct, TVT Capital

a) Declaring that the arbitration provision in the Libertas MCA Loan is void because the arbitration provision was either void or voidable.

b) Declaring the arbitration provision in the TVT MCA Loan to be void or voidable.

c) Declaring that the arbitration provisions were waived.

d) Determining that the arbitration provisions will not be enforced, because the enforcement of the arbitration provisions would inherently conflict with the underlying purposes of the Bankruptcy Code

**COUNT 2**
**FEDERAL CIVIL RICO: 18 U.S.C. § 1962**

186. Plaintiff realleges paragraphs 1 through 153 above and incorporates those allegations by reference.

187. This is a Civil RICO action brought under the federal Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §1961 *et seq*.,

188. Pursuant to 18 U.S.C. §1962(c), it is unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's collection of unlawful debt.

189. For the purposes of 18 U.S.C. § 1961(4), the association in fact enterprise is Libertas, and Noble Funding that came together for the purpose of issuing and collecting upon the unlawful debt from the Debtor pursuant to the MCA Loans. Libertas, and Noble Funding enriched themselves through the issuance and collection of the unlawful debt.

190. Libertas and Noble Funding acted in concert to convince the Debtor to enter into the Libertas MCA Loan.

191. Noble Funding continued to service the Libertas MCA Loan on behalf of Libertas throughout the collection process.

192. The association in fact enterprise was in existence was sufficiently long enough to engage in the issuance of the MCA Loans and engage in the collection of the unlawful debt.

193. Randy Saluck is a "person" within the meaning of 18 U.S.C. §1961(3) as he is a natural person capable of owning property.

194. Craig Paul is a "person" within the meaning of 18 U.S.C. §1961(3) as he is a natural person capable of owning property.

195. Craig Paul is a "person" within the meaning of 18 U.S.C. §1961(3) as he is a natural person capable of owning property.

196. David Waill is a "person" within the meaning of 18 U.S.C. §1961(3) as he is a natural person capable of owning property.

197. Michael Thomspon is a "person" within the meaning of 18 U.S.C. §1961(3) as he is a natural person capable of owning property.

198. Jessica Patrovic is a "person" within the meaning of 18 U.S.C. §1961(3) as she is a natural person capable of owning property.

199. Gary Katcher is a "person" within the meaning of 18 U.S.C. §1961(3) as he is a natural person capable of owning property.

200. Libertas is a "person" within the meaning of 18 U.S.C. §1961(3) as it is an entity capable of owning property.

201. Noble Financial is a "person" within the meaning of 18 U.S.C. §1961(3) as it is an entity capable of owning property.

202. Matthew Cohen is an individual and participated in the operations or management as the President of Noble Funding.

203. Kinetic is a "person" within the meaning of 18 U.S.C. §1961(3) as it is an entity capable of owning property.

204. Kinetic is listed as a servicer for Libertas in the Libertas MCA Loan.

205. Libertas, Kinetic, and Noble Funding, Craig Paul, David Wail, Michael Thompson, Noble Financial, and Matthe Cohen are distinct persons from the association in fact enterprise each being a legally different entity with different rights and responsibilities due to their different legal statuses.

206. The collection of the debt under the MCA Loans was unlawful, pursuant to 18 U.S.C. §1961(6) as Libertas and Noble Financial through the association in fact enterprise collected, and sought to collect, unlawful debts on in which the interest charged, or sought to be charged, was at least twice the enforceable rate in New York.

207. Randy Saluck is a culpable person liable under 18 U.S.C. §1962(c).

208. Randy Saluck is a culpable person liable under 18 U.S.C. §1962(c). Randy Saluck was employed by or associated with the association in fact enterprise and the association in fact enterprise was engaged in, or its activities of which affected, interstate commerce, and/or Randy Saluck conducted or participated, directly or indirectly, in the conduct of the association in fact enterprise's affairs through the collection of an unlawful debt from the Debtor.

209. Randy Saluck is the Chief Executive Officer and General Counsel for Libertas. Randy Saluck was responsible for the day-to-day operations of the association in fact enterprise. Further, Randy Saluck approved and executed the Libertas MCA Loan.

210. Jessica Patrovic is a is a culpable person liable under 18 U.S.C. §1962(c).

211. Jessica Patrovic was employed by or associated with the association in fact enterprise and the association in fact enterprise was engaged in, or its activities of which affected, interstate commerce, and/or Jessica Patrovic, conducted or participated, directly or indirectly, in the conduct of the association in fact enterprise's affairs through the collection of an unlawful debt from the Debtor.

212. Jessica Patrovic is the Chief of Staff and was engaged in the collection of the Libertas MCA Loan from the Debtor. On January 26, 2021, Ms. Patrovic send the following email to Matthew Cohen and Scott Zankl, stating, "Hey matt, they bounced/returned a debit on 1/19. Yesterday was to makeup for that. We couldnt reach them so we re-ran it." Therefore, Ms. Patrovic was engaged in the collection of the unlawful debt from the Debtor. Another example is that Ms. Patrovic filed the proof of claim on behalf of TVT Direct and Libertas on the TVT MCA Loan.

213. Gary Katcher is a culpable person liable under 18 U.S.C. §1962(c).

214. Gary Katcher was employed by or associated with the association in fact enterprise and the association in fact enterprise was engaged in, or its activities of which affected, interstate commerce, and/or Gary Katcher, conducted or participated, directly or indirectly, in the conduct of the association in fact enterprise's affairs through the collection of an unlawful debt from the Debtor.

215. Gary Katcher founded Libertas and was the Executive Chairman at Libertas, therefore Gary Katcher through his actions participated, directly or indirectly in the in the association in fact enterprise's affairs which was engaged in the collection of the unlawful debt from the Debtor. As founder, Mr. Katcher would have set up the vehicle, i.e., Libertas, and oversaw the operations and those in management at Libertas.

216. Craig Paul is a culpable person liable under 18 U.S.C. §1962(c).

217. Craig Paul was employed by or associated with the association in fact enterprise and the association in fact enterprise was engaged in, or its activities of which affected, interstate commerce, and/or Craig Paul, conducted or participated, directly or indirectly, in the conduct of the association in fact enterprise's affairs through the collection of an unlawful debt from the Debtor.

218. Craig Paul is the Chief Financial Officer for Libertas. As Chief Financial Officer, Craig Paul executed various documents with the state of Connecticut on behalf of the association in fact enterprise. This includes annual reports for Libertas. Craig Paul, as chief financial officer, oversaw the day-to-day finances of the association in fact enterprise.

219. David Waill is a culpable person liable under 18 U.S.C. §1962(c).

220. David Waill is a culpable person liable under 18 U.S.C. §1962(c). David Waill was employed by or associated with the association in fact enterprise and the association in fact enterprise was engaged in, or its activities of which affected, interstate commerce, and/or David Waill, conducted or participated, directly or indirectly, in the conduct of the association in fact enterprise's affairs through the collection of an unlawful debt from the Debtor.

221. David Waill is the Senior Managing Director of Credit for Libertas. As the Senior Managing Director, David Waill would have directly or indirectly conducted or participated in the affairs of the association in fact enterprise while it was engaged in the collection of the unlawful debt.

222. Michael Thomspon is a culpable person liable under 18 U.S.C. §1962(c).

223. Michael Thomspon was employed by or associated with the association in fact enterprise and the association in fact enterprise was engaged in, or its activities of which affected,

interstate commerce, and/or Michael Thomspon, conducted or participated, directly or indirectly, in the conduct of the association in fact enterprise's affairs through the collection of an unlawful debt from the Debtor.

224. Michael Thomspon is the Senior Managing Direct of Credit and Head of Underwriting for Libertas. As Senior Managing Direct of Credit and Head of Underwriting for Libertas, Michael Thomspon would have directly or indirectly conducted or participated in the affairs of the association in fact enterprise while it was engaged in the collection of the unlawful debt.

225. Libertas is a culpable person liable under 18 U.S.C. §1962(c).

226. Libertas was employed by or associated with the association in fact enterprise and the association in fact enterprise was engaged in, or its activities of which affected, interstate commerce, and/or Libertas conducted or participated, directly or indirectly, in the conduct of the association in fact enterprise's affairs through the collection of an unlawful debt from the Debtor.

227. Kinetic is a culpable person liable under 18 U.S.C. §1962(c).

228. Kinetic was employed by or associated with the association in fact enterprise and the association in fact enterprise was engaged in, or its activities of which affected, interstate commerce, and/or Kinetic conducted or participated, directly or indirectly, in the conduct of the association in fact enterprise's affairs through the collection of an unlawful debt from the Debtor.

229. Kinetic collected on behalf of the association in fact enterprise the unlawful debt issued to, and collected from, the Debtor.

230. Noble Financial is a culpable person liable under 18 U.S.C. §1962(c).

231. Noble Financial was employed by or associated with the association in fact enterprise and the association in fact enterprise was engaged in, or its activities of which affected,

interstate commerce, and/or Noble Financial conducted or participated, directly or indirectly, in the conduct of the association in fact enterprise's affairs through the collection of an unlawful debt from the Debtor.

232. Noble Financial acted as the broker for the transaction between the Debtor and Libertas in the issuance of the Libertas MCA Loan.

233. Matthew Cohen is a culpable person liable under 18 U.S.C. §1962(c).

234. Matthew Cohen was employed by or associated with the association in fact enterprise and the association in fact enterprise was engaged in, or its activities of which affected, interstate commerce, and/or Matthew Cohen conducted or participated, directly or indirectly, in the conduct of the association in fact enterprise's affairs through the collection of an unlawful debt from the Debtor.

235. Matthew Cohen is the president of Noble Funding and actively participated in procuring the Libertas MCA Loan between Libertas and the Debtor.

236. Further, Noble Financial and Matthew Cohen continued to service the Libertas MCA Loan after the initial loan by providing payoff information and communicating about the payments being made to the association in fact enterprise.

237. At all times relevant through and including the filing of this action, the Defendants violated, and continue to violate 18 U.S.C. § 1962.

238. By virtue of the violations of 18 U.S.C. §1962(c), the Debtor sustained injury to both its business and property, including but not limited to paying the unlawful debt and incurring additional debt to pay the unlawful debt.

239. The collection of the unlawful debt was the proximate cause of the Debtor's damages, which would not have occurred without the Defendants' conduct, to wit: funds of the

Debtor were transferred to the association in fact enterprise for the purposes of paying on the unlawful debt. In addition, the acts and violations were the direct, natural and proximate cause of the damage to the Debtor, including, but not limited to, the loss of the Debtor's funds.

240. Each of the culpable persons, because of their unlawful activities under 18 U.S.C. §1962, are liable under 18 U.S.C. §1964(c) for three-fold the amount of damages, which shall be determined by this Court, plus attorneys' fees and costs.

**WHEREFORE**, the Plaintiff requests that this Court enter judgement against the Defendants, pursuant to 18 U.S.C. § 1964(c), an amount of damages as determined by this Court against Defendants, Libertas, Kinetic, Randy Saluck, Jessica Patrovic, Gary Katcher, Craig Paul, David Waill, Michael Tompson, Noble Financial and Matthew Cohen plus treble damages, costs and attorneys' fees.

**COUNT 3**
**CONSPIRACY UNDER 18 U.S.C. § 1962(d)**

(Conspiracy under 18 U.S.C. §1962(d)

241. The allegations of paragraphs 1 through 153 and Count 2 above, including all relief set forth therein, are incorporated herein by reference.

242. This Count seeks relief against Libertas, Kinetic, Randy Saluck, Craig Paul, David Waill, Michael Tompson, Jessica Petrovic, Gary Katcher, Noble Financial, and Matthew Cohen, and Matthew Cohen for violation of 18 U.S.C. §1962(d).

243. In violation of 18 U.S.C. §1962(d), Defendants agreed and conspired to violate 18 U.S.C. §1962(c) to: (1) use or invest income that is derived from the collection of an unlawful debt in the association in fact enterprise, (2) acquire or maintain interests in the association in fact enterprise to collect unlawful debt against the Debtor; or (3) conduct and participate in the conduct

of the affairs of the association in fact enterprise through the collection of unlawful debt from the Debtor through the collection of the unlawful debt under the Libertas MCA Loan.

244. Defendants Libertas, Kinetic, Randy Saluck, Craig Paul, David Waill, Michael Tompson, Jessica Petrovic, Gary Katcher, Noble Financial, and Matthew Cohen intentionally conspired and agreed to directly and indirectly use or invest income that is derived from the collection of unlawful debt by or through the association in fact enterprise, which was engaged in interstate commerce, and conducted and participated in the conduct of the affairs of the association in fact enterprise through the collection of unlawful debt from the Debtor and agreed to the commission of those acts to further activities to collect an unlawful debt as described above. That conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(a), (b), and (c) in violation of 18 U.S.C. § 1962(d).

245. As a direct and proximate result of Defendants' Libertas, Kinetic, Randy Saluck, Craig Paul, David Waill, Michael Tompson, Jessica Petrovic, Gary Katcher, Noble Financial, and Matthew Cohen conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), the Debtor was injured and, in its business, and property in that it paid the unlawful debt.

WHEREFORE, the Plaintiff requests that this Court enter judgement against Defendants, Libertas, Kinetic, Randy Saluck, Craig Paul, David Waill, Michael Tompson, Jessica Petrovic, Gary Katcher, Noble Financial, and Matthew Cohen, jointly and severally, pursuant to 18 U.S.C. § 1962(d), in an amount of damages determined by this Court plus treble damages, costs, and attorneys' fees.

**COUNT 4**
**<u>CIVIL RICO: 18 U.S.C. § 1962</u>**
(Libertas as the Enterprise)

246. Plaintiff realleges paragraphs 1 through 153 above and incorporates those allegations by reference.

247. This is a Civil RICO action brought under the federal Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. §1961 et seq.,

248. Pursuant to 18 U.S.C. §1962(c), it is unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's collection of unlawful debt.

249. Randy Saluck is a "person" within the meaning of 18 U.S.C. §1961(3) as he is a natural person capable of owning property.

250. Craig Paul is a "person" within the meaning of 18 U.S.C. §1961(3) as he is a natural person capable of owning property.

251. Craig Paul is a "person" within the meaning of 18 U.S.C. §1961(3) as he is a natural person capable of owning property.

252. David Waill is a "person" within the meaning of 18 U.S.C. §1961(3) as he is a natural person capable of owning property.

253. Michael Thomspon is a "person" within the meaning of 18 U.S.C. §1961(3) as he is a natural person capable of owning property.

254. Noble Financial is a "person" within the meaning of 18 U.S.C. §1961(3) as it is an entity capable of owning property.

255. Matthew Cohen is an individual and participated in the operations or management as the President of Noble Funding.

256. Kinetic is a "person" within the meaning of 18 U.S.C. §1961(3) as it is an entity capable of owning property.

257. For the purposes of 18 U.S.C. § 1961(4), the enterprise is Libertas.

258. Libertas is a limited liability corporation formed under the laws of Connecticut.

259. Randy Saluck, Kinetic, Noble Financial, Craig Paul, David, Wail, Jessica Petrovic, Gary Katcher, Michael Thompson, Noble Financial and Matthew Cohen are distinct persons from Libertas, as the enterprise, each being a legally different entity with different rights and responsibilities due to their different legal statuses.

260. The debt owed to and collected from the Debtor was an unlawful debt under 18 U.S.C. §1961(6) as the debt was (a) unenforceable under State or Federal law in whole or in part as to principal or interest because of the laws relating to usury, and (b) was incurred in connection with the business of lending money or a thing of value at a rate usurious under State or Federal law, where the usurious rate is at least twice the enforceable rate;

261. The debts collected under each of the Libertas MCA Loan was more than twice the amount of the enforceable rate either New York.

262. The enterprise was in the business of lending money, including the issuance and collection of unlawful debt through the issuance of Libertas MCA Loan.

263. The enterprise issued the Libertas MCA Loan to the Debtor and collected the unlawful debt from the Debtor.

264. The debts collected were unenforceable in whole or in part based upon the usury laws of either New York.

265. For the purposes of 18 U.S.C. § 1961(4), the enterprise is Libertas. Libertas is a limited liability corporation formed under the laws of Connecticut.

266. Randy Saluck is a culpable person liable under 18 U.S.C. §1962(c).

267. Randy Saluck is a culpable person liable under 18 U.S.C. §1962(c). Randy Saluck was employed by or associated with the Libertas enterprise and the Libertas enterprise engaged in, or its activities of which affected, interstate commerce, and/or Randy Saluck conducted or participated, directly or indirectly, in the conduct of the Libertas enterprise's affairs through the collection of an unlawful debt from the Debtor.

268. Randy Saluck is the Chief Executive Officer and General Counsel for Libertas. Randy Saluck was responsible for the day-to-day operations of the Libertas enterprise. Further, Randy Saluck approved and executed the Libertas MCA Loan.

269. Jessica Patrovic is a is a culpable person liable under 18 U.S.C. §1962(c).

270. Jessica Patrovic was employed by or associated with the Libertas enterprise and the Libertas enterprise was engaged in, or its activities of which affected, interstate commerce, and/or

Jessica Patrovic, conducted or participated, directly or indirectly, in the conduct of the Libertas enterprise's affairs through the collection of an unlawful debt from the Debtor.

271. Jessica Patrovic is the Chief of Staff and was engaged in the collection of the Libertas MCA Loan from the Debtor. On January 26, 2021, Ms. Patrovic send the following email to Matthew Cohen and Scott Zankl, stating, "Hey matt, they bounced/returned a debit on 1/19. Yesterday was to makeup for that. We couldnt reach them so we re-ran it." Therefore, Ms. Patrovic was engaged in the collection of the unlawful debt from the Debtor. Another example is that Ms. Patrovic filed the proof of claim on behalf of TVT Direct and Libertas on the TVT MCA Loan.

272. Gary Katcher is a culpable person liable under 18 U.S.C. §1962(c).

273. Gary Katcher was employed by or associated with the Libertas enterprise and the Libertas enterprise was engaged in, or its activities of which affected, interstate commerce, and/or Gary Katcher, conducted or participated, directly or indirectly, in the conduct of the Libertas enterprise's affairs through the collection of an unlawful debt from the Debtor.

274. Gary Katcher founded Libertas and was the Executive Chairman at Libertas, therefore Gary Katcher through his actions participated, directly or indirectly in the in the Libertas enterprise's affairs which was engaged in the collection of the unlawful debt from the Debtor. As founder, Mr. Katcher would have set up the vehicle, i.e., Libertas, and oversaw the operations and those in management at Libertas.

275. Craig Paul is a culpable person liable under 18 U.S.C. §1962(c).

276. Craig Paul was employed by or associated with the Libertas enterprise and the Libertas enterprise was engaged in, or its activities of which affected, interstate commerce, and/or Craig Paul, conducted or participated, directly or indirectly, in the conduct of the Libertas enterprise's affairs through the collection of an unlawful debt from the Debtor.

277. Craig Paul is the Chief Financial Officer for Libertas. As Chief Financial Officer, Craig Paul executed various documents with the state of Connecticut on behalf of the Libertas enterprise. This includes annual reports for Libertas. Craig Paul, as chief financial officer, oversaw the day-to-day finances of the Libertas enterprise.

278. David Waill is a culpable person liable under 18 U.S.C. §1962(c).

279. David Waill is a culpable person liable under 18 U.S.C. §1962(c). David Waill was employed by or associated with Libertas enterprise and the Libertas enterprise was engaged in, or its activities of which affected, interstate commerce, and/or David Waill, conducted or

participated, directly or indirectly, in the conduct of the Libertas enterprise's affairs through the collection of an unlawful debt from the Debtor.

280. David Waill is the Senior Managing Director of Credit for Libertas. As the Senior Managing Director, David Waill would have directly or indirectly conducted or participated in the affairs of the Libertas enterprise while it was engaged in the collection of the unlawful debt.

281. Michael Thomspon is a culpable person liable under 18 U.S.C. §1962(c).

282. Michael Thomspon was employed by or associated with the Libertas enterprise and the Libertas enterprise was engaged in, or its activities of which affected, interstate commerce, and/or Michael Thomspon, conducted or participated, directly or indirectly, in the conduct of the Libertas enterprise's affairs through the collection of an unlawful debt from the Debtor.

283. Michael Thomspon is the Senior Managing Direct of Credit and Head of Underwriting for Libertas. As Senior Managing Direct of Credit and Head of Underwriting for Libertas, Michael Thomspon would have directly or indirectly conducted or participated in the affairs of the association in fact enterprise while it was engaged in the collection of the unlawful debt.

284. Kinetic is a culpable person liable under 18 U.S.C. §1962(c).

285. Kinetic was employed by or associated with the Libertas enterprise and the Libertas enterprise was engaged in, or its activities of which affected, interstate commerce, and/or Noble Financial conducted or participated, directly or indirectly, in the conduct of the Libertas enterprise's affairs through the collection of an unlawful debt from the Debtor.

286. Kinetic was listed as the servicer for Libertas and as such was engaged in the collection of the unlawful debt.

287. Noble Financial is a culpable person liable under 18 U.S.C. §1962(c).

288. Noble Financial was employed by or associated with the Libertas enterprise and the Libertas enterprise was engaged in, or its activities of which affected, interstate commerce, and/or Noble Financial conducted or participated, directly or indirectly, in the conduct of the Libertas enterprise's affairs through the collection of an unlawful debt from the Debtor.

289. Noble Financial acted as the broker for the transaction between the Debtor and Libertas in the issuance of the Libertas MCA Loan.

290. Matthew Cohen is a culpable person liable under 18 U.S.C. §1962(c).

291. Matthew Cohen was employed by or associated with the association in fact enterprise and the association in fact enterprise was engaged in, or its activities of which affected, interstate commerce, and/or Matthew Cohen conducted or participated, directly or indirectly, in the conduct of the association in fact enterprise's affairs through the collection of an unlawful debt from the Debtor.

292. Matthew Cohen is the president of Noble Funding and actively participated in procuring the Libertas MCA Loan between Libertas and the Debtor.

293. Further, Noble Financial and Matthew Cohen continued to service the Libertas MCA Loan after the initial loan by providing payoff information and communicating about the payments being made to the association in fact enterprise.

294. At all times relevant through and including the filing of this action, the Defendants violated, and continue to violate 18 U.S.C. § 1962.

295. By virtue of the violations of 18 U.S.C. §1962(c), the Debtor sustained injury to both its business and property, including but not limited to paying the unlawful debt and incurring additional debt to pay the unlawful debt.

296. The collection of the unlawful debt was the proximate cause of the Debtor's damages, which would not have occurred without the Defendants' conduct, to wit: funds of the Debtor were transferred to the enterprise for the purposes of paying on the unlawful debt. In addition, the acts and violations were the direct, natural and proximate cause of the damage to the Debtor, including, but not limited to, the loss of the Debtor's funds.

297. Each of the culpable persons, because of their unlawful activities under 18 U.S.C. §1962, are liable under 18 U.S.C. §1964(c) for three-fold the amount of damages, which shall be determined by this Court, plus attorneys' fees and costs.

**WHEREFORE**, the Plaintiff requests that this Court enter judgement against the Defendants, pursuant to 18 U.S.C. § 1964(c), an amount of damages as determined by this Court against Defendants, Randy Saluck, Kinetic, Noble Financial, Craig Paul, David, Wail, Jessica Petrovic, Gary Katcher, Michael Thompson, Noble Financial and Matthew Cohen plus treble damages, costs and attorneys' fees.

## COUNT 5
## CONSPIRACY UNDER 18 U.S.C. § 1962(d)

(Conspiracy under 18 U.S.C. §1962(d)

298. The allegations of paragraphs 1 through 153 above are incorporated herein by reference.

299. This Count seeks relief against Randy Saluck, Kinetic, Noble Financial, Craig Paul, David, Wail, Jessica Petrovic, Gary Katcher, Michael Thompson, Noble Financial and Matthew Cohen for violation of 18 U.S.C. §1962(d).

300. In violation of 18 U.S.C. §1962(d), Defendants agreed and conspired to violate 18 U.S.C. §1962(c) to: (1) use or invest income that is derived from the collection of an unlawful debt in the enterprise, (2) acquire or maintain interests in the to collect unlawful debt against the

Debtor; or (3) conduct and participate in the conduct of the affairs of through the collection of unlawful debt from the Debtor.

301. Defendants Randy Saluck, Kinetic, Noble Financial, Craig Paul, David, Wail, Jessica Petrovic, Gary Katcher, Michael Thompson, Noble Financial and Matthew Cohen have intentionally conspired and agreed to directly and indirectly use or invest income that is derived from the collection of unlawful debt by or through the enterprise, which was engaged in interstate commerce, and conducted and participated in the conduct of the affairs of enterprise through the collection of unlawful debt from the Debtor and agreed to the commission of those acts to further activities to collect an unlawful debt as described above. That conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(a), (b), and (c) in violation of 18 U.S.C. § 1962(d).

302. As a direct and proximate result of Defendants' Randy Saluck, Kinetic, Noble Financial, Craig Paul, David, Wail, Jessica Petrovic, Gary Katcher, Michael Thompson, conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), the Debtor was injured and, in its business, and property in that it paid the unlawful debt.

WHEREFORE, the Plaintiff requests that this Court enter judgement against Defendants, Noble Financial and Matthew Cohen Kinetic Funding, Randy Saluck, Craig Paul, David Waill, Michael Tompson, Noble Financial and Matthew Cohen, jointly and severally, pursuant to 18 U.S.C. § 1962(d), in an amount of damages determined by this Court plus treble damages, costs, and attorneys' fees.

**COUNT 6**
**AVOIDANCE OF FRAUDULENT TRANSFER OF PROPERTY**
**PURSUANT TO 11 USC § 544 AND SECTION 726.105(1)(a), FLA. STAT.**
**AND/OR 11 U.S.C. § 548(a)(1) – PONZI SCHEME**

303. The Plaintiff realleges paragraphs 1 through 153 and Counts 2 and 3 above, including all relief sought therein, and incorporates those allegations by reference.

304. This is an action pursuant to 11 U.S.C. § 544 and 726.105(1)(a), Fla. Stat.

305. This is an action pursuant to 11 U.S.C. § 548(a)(1).

306. To the extent that the Libertas MCA Loan was properly executed, the Libertas MCA Loan was an obligation incurred by the Debtor in favor of Libertas.

307. The Libertas MCA Loan arbitration agreement was an obligation incurred by the Debtor in favor of Libertas.

308. The Libertas MCA Loan arbitration agreement was a transfer of a property interest by the Debtor in favor of Libertas.

309. The Debtor had a right to sue in court which is a property right in both Florida and New York law. The waiver of the right to sue in court was a transfer of a property right.

310. Payments for the benefit of Libertas may have been made through its servicer Kinetic Funding ("**Kinetic**").

311. The cash payments set forth in Exhibit E attached hereto were transfers of the Debtor's interests in property to or for the benefit of Libertas (the "**Libertas Transfers**").

312. To the extent the TVT Direct Loan was properly executed, the TVT Direct loan was an obligation incurred by the Debtor in favor of TVT Direct and/or Libertas.

313. The TVT MCA Loan arbitration was agreement was an obligation incurred by the Debtor in favor of TVT Direct.

314. The TVT MCA Loan arbitration agreement was a transfer of a property interest by the debtor in favor of TVT Direct.

315. The Debtor had a right to sue in court which is a property right under both Florida and New York law. The waiver of the right to sue in court was aa transfer of a property right.

316. The cash payments set forth in Composite Exhibit G attached hereto were transfers of the Debtor's interests in property to or for the benefit of TVT Direct, TVT Capital and/or Libertas.

317. The Debtor incurred the obligations set forth in the Libertas MCA Loan and the Libertas MCA arbitration agreement in favor of Libertas and made the transfers of payments and the transfer of the Debtor's interest in rights under the Libertas MCA arbitration agreement within the two-year period immediately preceding the Petition Date.

318. The Debtor incurred the obligations set forth in the Libertas MCA Loan and the Libertas MCA arbitration agreement in favor of Libertas and made the transfers of payments and the transfer of the Debtor's interest in rights under the Libertas MCA arbitration agreement within the four-years immediately preceding the Petition Date.

319. The Debtor incurred the obligations set forth in the TVT MCA Loan and the TVT MCA Loan arbitration agreement in favor of TVT Direct, TVT Capital, and/or Libertas and made the transfers of payments and the transfer of the Debtor's interest in rights under the TVT MCA arbitration agreement within the two-years immediately preceding the Petition Date.

320. The Debtor incurred the obligations set forth in the TVT Direct Loan and the TVT MCA Loan arbitration agreement in favor of TVT Direct, TVT Capital and/or Libertas and made the transfers of payments and the transfer of the Debtor's interest in rights under the TVT MCA arbitration agreement within the four-years immediately preceding the Petition Date.

321. At all times relevant, through the Petition Date, the Debtor was operated as a Ponzi scheme or other financial fraud:

(a) Lack of a legitimate business that produces revenue;

(b) The promise of guaranteed interest or other earnings at rates higher than market rates;

(c) Lack of transparency

(d) Lack of adequate books and records or fabrication of books and records;

(e) Misrepresentations made to lure and/or retain lenders; and

(f) Use of new borrowed funds to pay guaranteed interest to existing lenders.

322. American Express Travel Related Services Co., Inc. is a holder of a claim that is allowable against the Debtor which would have standing to assert a claim for relief under Section 726.105(1)(a) of the Florida Statutes. The transfers set forth above are avoidable under Section 544 of the Bankruptcy Code and Section 726.105(1)(a) of the Florida Statutes.

**WHEREFORE**, the Plaintiff respectfully requests this Court enter a judgment against the Defendants:

a) Finding that the Debtor was being operated as a Ponzi scheme at all times relevant to this complaint.

b) Finding the obligations, including the Libertas MCA Loan and the Libertas MCA Loan arbitration agreement, incurred to Libertas and Libertas Transfers, including the payments and the transfer of property rights entering into the Libertas MCA arbitration agreement were fraudulent pursuant to Section 726.105(1)(a) of the Florida Statutes;

c) b) Finding the obligations, including the Libertas MCA Loan and the Libertas MCA Loan arbitration agreement, incurred to Libertas and Libertas Transfers, including the payments and the transfer of property rights entering into the Libertas MCA arbitration agreement were fraudulent pursuant to 11 U.S.C. § 548(a)(1).

d) Finding the obligations incurred to TVT Direct, including the TVT MCA Loan and

the TVT MCA Loan arbitration agreement and the TVT Transfers, including payments and the transfer of property rights entering into the TVT MCA Loan arbitration agreement were fraudulent pursuant to Section 726.105(1)(a) of the Florida Statutes;

e) d) Finding the obligations incurred to TVT Direct, including the TVT MCA Loan and the TVT MCA Loan arbitration agreement and the TVT transfers of payments and the transfer of property rights entering into the TVT MCA Loan arbitration agreement were fraudulent pursuant to Section 11 U.S.C. § 548(a)(1).

f) Avoiding the obligations, including the Libertas MCA Loan and the Libertas MCA Loan arbitration agreement, made to Libertas and the Libertas transfers of payments and transfer of property rights entering into the Libertas MCA arbitration agreement made to Libertas and/or Kinetic pursuant to Section 544 of the Bankruptcy Code and Section 726.105(1)(a) of the Florida Statutes and avoiding all other obligations incurred by and property transferred by the Debtor to Libertas up in addition to those specifically referred to in this Complaint, if any, which are avoidable under Section 726.105(1)(a) of the Florida Statutes;

g) Avoiding the obligations including the Libertas MCA Loan and the Libertas MCA Loan arbitration agreement, made to Libertas and the Libertas transfers of payments and the Libertas MCA arbitration agreement made to Libertas and/or Kinetic pursuant to Section 548(a)(1) of the Bankruptcy Code and avoiding all other obligations incurred by and property transferred by the Debtor to Libertas in addition to those specifically referred to in this Complaint, if any, which are avoidable under Section 548(a)(1) of the Bankruptcy Code;

h) Avoiding the obligations made to TVT Direct including the TVT MCA Loan and the TVT MCA Loan arbitration agreement and the TVT transfer of payments and the transfer of the property interest in the TVT MCA Loan arbitration agreement made to TVT Direct, TVT

Capital and/or Libertas pursuant to Section 544 of the Bankruptcy Code and Section 726.105(1)(a) of the Florida Statutes and avoiding all other obligations incurred by and property transferred by the Debtor to TVT Direct, TVT Capital, and/or Libertas up in addition to those specifically referred to in this Complaint, if any, which are avoidable under Section 726.105(1)(a) of the Florida Statutes;

i) Avoiding the obligations made to TVT Direct including the TVT MCA Loan and the TVT MCA Loan arbitration agreement and the TVT transfer of payments and the transfer of the property interest in the TVT MCA Loan arbitration agreement Transfers made to TVT Direct, TVT Capital, and/or Libertas pursuant to Section 548(a)(1) of the Bankruptcy Code and avoiding all other obligations incurred by and property transferred by the Debtor to Libertas in addition to those specifically referred to in this Complaint, if any, which are avoidable under Section 548(a)(1) of the Bankruptcy Code;

j) Granting such other and further relief as the Court deems proper.

**COUNT 7**
**AVOIDANCE OF FRAUDULENT TRANSFER OF PROPERTY**
**PURSUANT TO 11 USC § 544 AND SECTION 726.105(1)(a), FLA. STAT.**
**AND\OR 11 U.S.C. § 548(a)(1) – NO PONZI SCHEME**

323. The Plaintiff realleges paragraphs 1 through 153 and Count 2 and 3 above, including all relief sought therein, and incorporates those allegations by reference.

324. This is an action pursuant to 11 U.S.C. §544 and 726.105(1)(a), Fla. Stat.

325. This is an action pursuant to 11 U.S.C. § 548(a)(1).

326. The Libertas MCA Loan was an obligation incurred by the Debtor in favor of Libertas.

327. The Libertas MCA Loan Transfers set forth in Exhibit E attached hereto were transfers of the Debtor's interests in property to or for the benefit of Libertas.

328. The Libertas MCA Loan arbitration agreement was an obligation incurred by the Debtor in favor of Libertas.

329. The Libertas MCA Loan arbitration agreement was the transfer of an interest in property to or for the benefit of Libertas.

330. Payments for the benefit of Libertas may have been made through its servicer Kinetic.

331. The TVT MCA Loan was an obligation incurred by the Debtor in favor of TVT Direct and/or Libertas.

332. The TVT MCA Loan arbitration agreement was an obligation incurred by the Debtor in favor of TVT Direct, TVT Capital and/or Libertas.

333. The TVT MCA Loan arbitration agreement was the transfer of an interest in property to or for the benefit of TVT Direct, TVT Capital and/or Libertas.

334. TVT Capital may have received payments for the benefit of TVT Direct Funding and/or Libertas.

335. The transfer of payments to TVT Capital, TVT Direct and/or Libertas set forth in Composite Exhibit G attached hereto were transfers of the Debtor's interests in property to TVT Direct, TVT Capital and/or Libertas.

336. The transfer of a property interest in entering into the TVT MCA arbitration agreement was a transfer of property to or for the benefit of TVT Direct, TVT Capital, and/or Libertas.

337. Prior to entering into the Libertas MCA Loan, the Debtor had started a pattern of borrowing funds from traditional banks, floor plan lenders and Private Investors.

338. The Debtor intentionally was incurring obligations that it knew were in violation of the terms of other prior lenders and knew or should have known that the additional borrowing was for the purpose of repaying prior lenders and/or for the personal use of its principals to such an extent that the Debtor knew or should have known that it would not be able to repay the loans from its business operations, but required a steady stream of new borrowing to continue borrowing.

339. Franklin Capital Funding, LLC is a Delaware limited liability company.

340. Franklin Capital Group, LLC, is a Michigan Limited Liability Company doing business as Wing Lake Capital. Franklin Capital Funding, LLC and Franklin Capital Group, LLC d/b/a Wing Lake Capital are referred to collectively as "Wing Lake."

341. On or about November 3, 2021, the Debtor entered into a written agreement with Wing Lake to provide for, in part, refinancing of prior MCAs. As part of that agreement, the Debtor was prohibited from entering into other MCAs as long as there was a balance owed under the agreement with Wing Lake.

342. At all times relevant to the allegations in this Complaint, the Debtor had an outstanding balance to Wing Lake.

343. Further, at all times relevant to the allegations in this Complaint, the Debtor had an outstanding balance due to Seacoast which had a secured lien on the Debtor's accounts receivables and inventory.

344. Further, the Debtor, at all times relevant to the allegations in this Complaint, the Debtor was obligated to unsecured creditors, including American Express.

345. The Debtor was engaged in a pattern of continuously borrowing money that it knew that it could not repay. In entering the MCA Loans, the Debtor with the actual intent to hinder, delay or defraud Wing Lake, Seacoast and American Express.

346. In part, the Debtor continued to borrow money to support the lifestyle of Scott and Kristen Zankl.

347. The Debtor had made promises to other creditors that it would not borrow, or otherwise sell, its Future Receipts.

348. The Debtor incurred the obligations set forth in the Libertas MCA Loan and the Libertas MCA arbitration agreement in favor of Libertas and made the transfers of payments and the transfer of the Debtor's interest in rights under the Libertas MCA arbitration agreement within two or four-year period prior to the Petition Date with the actual intent to hinder, delay or defraud entities to which the Debtor was or became, on or after the date of the transfer, indebted.

349. The Debtor incurred the obligations set forth in the TVT Direct Loan and the TVT MCA Loan arbitration agreement in favor of TVT Direct, TVT Capital, and/or Libertas and made the transfers of payments and the transfer of the Debtor's interest in rights under the TVT MCA arbitration agreement within the two or four-year period prior to the Petition Date with the actual intent to hinder, delay or defraud entities to which the Debtor was or became, on or after the date of the transfer, indebted.

350. American Express Travel Related Services Co., Inc. is a holder of a claim that is allowable against the Debtor which would have standing to assert a claim for relief under Section 726.105(1)(a) of the Florida Statutes. The Libertas Transfers and TVT Transfers are avoidable under Section 544 of the Bankruptcy Code and Section 726.105(1)(a) of the Florida Statutes.

**WHEREFORE**, the Plaintiff respectfully requests this Court enter a judgment against the Defendants:

a) Finding the Libertas MCA Loans were obligations incurred by the Debtor in favor of Libertas and was fraudulent pursuant to Section 726.105(1)(a) of the Florida Statutes;

b) Finding the Libertas MCA Loan arbitration agreement was an obligation incurred by the Debtor in favor of Libertas and was fraudulent pursuant to 726.105(1)(a) of the Florida Statutes;

c) Finding the Libertas MCA Loans were obligations incurred by the Debtor in favor of Libertas and was fraudulent pursuant to 11 U.S.C. §548(a)(1).

d) Finding that the Libertas MCA Loan arbitration agreement was an obligation incurred by the Debtor in favor of Libertas was fraudulent pursuant to 11 U.S.C. §548(a)(1).

e) Finding that the Libertas Transfers as set forth in Exhibit E attached hereto were fraudulent pursuant to Section 726.105(1)(a) of the Florida Statutes;

f) Finding that the Libertas Transfers set forth in Exhibit E attached hereto were transfers pursuant to 11 U.S.C. § 548(a)(1);

g) Finding that the Libertas MCA Loan arbitration agreement was a transfer of property of the Debtor which was fraudulent pursuant to Section 726.105(1)(a) of the Florida Statutes;

h) Finding that the Libertas MCA Loan arbitration agreement was a transfer of property of the Debtor which was fraudulent pursuant to 11 U.S.C. § 548(a)(1);

i) Finding the TVT MCA Loan was an obligation incurred by the Debtor in favor of TVT Direct and/or Libertas and was fraudulent pursuant to Section 726.105(1)(a) of the Florida Statutes;

j) Finding the TVT MCA Loan arbitration agreement was an obligation incurred by the Debtor in favor of TVT Direct and/or Libertas and was fraudulent pursuant to 726.105(1)(a) of the Florida Statutes;

k) Finding the TVT MCA Loan was an obligations incurred by the Debtor in favor of TVT Direct and/or Libertas and was fraudulent pursuant to 11 U.S.C. §548(a)(1).

l) Finding that the TVT MCA Loan arbitration agreement incurred by the Debtor in favor of TVT Direct and/or Libertas was fraudulent pursuant to 11 U.S.C. §548(a)(1).

m) Finding that the TVT Transfers to TVT Direct and/or Libertas as set forth in Exhibit F attached hereto were transfers pursuant to Section 726.105(1)(a) of the Florida Statutes;

n) Finding that the TVT Transfers to TVT Direct and/or Libertas as set forth in Exhibit F attached hereto were transfers pursuant to 11 U.S.C. 548(a)(1);

o) Finding the TVT MCA Loan arbitration agreement was a transfer of property by the Debtor in favor of TVT Direct and/or Libertas and was fraudulent pursuant to 726.105(1)(a) of the Florida Statutes;

p) Finding that the TVT MCA Loan arbitration agreement was a transfer of property by the Debtor in favor of TVT Direct and/or Libertas and was fraudulent pursuant to 11 U.S.C. §548(a)(1).

q) Avoiding the obligations incurred by the Debtor and the transfers made by the Debtor to Libertas and TVT Direct, TVT Capital and/or Libertas as set forth above pursuant to Section 544 of the Bankruptcy Code and Section 726.105(1)(a) of the Florida Statutes and avoiding all other obligations and transfers by the Debtor to Libertas and TVT Direct, TVT Capital and/or Libertas in addition to those specifically referred to in this Complaint, if any, which are avoidable under Section 726.105(1)(a) of the Florida Statutes;

r) Avoiding the obligations incurred by the Debtor and the transfers made by the Debtor to Libertas and TVT Direct, TVT Capital and/or Libertas as set forth above pursuant to Section 548(a)(1) of the Bankruptcy Code and avoiding all other obligations and transfers by the Debtor to Libertas and TVT Direct, TVT Capital and/or Libertas in addition to those specifically referred to in this Complaint, if any, which are avoidable under Section 548(a)(1);

s) Granting such other and further relief as the Court deems proper.

**COUNT 8**
**AVOIDANCE OF FRAUDULENT TRANSFER OF PROPERTY PURSUANT TO 11 U.S.C. § 544 AND FLA. STAT. § 726.105(1)(b) AND 11 U.S.C. §548(a)(1)(B)**

351. The Plaintiff realleges paragraphs 1 through 153 and Counts 2 and 3 above, including all relief sought therein, and incorporates those allegations by reference.

352. The Libertas loan was an obligation incurred by the Debtor in favor of Libertas.

353. The Libertas MCA Loan arbitration agreement was an obligation incurred by the Debtor in favor of Libertas.

354. The Libertas MCA Loan arbitration agreement was the transfer of an interest in property to or for the benefit of Libertas.

355. Payments for the benefit of Libertas may have been made through its servicer Kinetic.

356.

357. The Libertas Transfers set forth in Exhibit E attached hereto were transfers of the Debtor's interests in property to or for the benefit of Libertas.

358. The Libertas MCA Loan arbitration agreement was an obligation incurred by the Debtor in favor of Libertas.

359. The TVT MCA loan was an obligation incurred by the Debtor in favor of TVT Direct, TVT Capital, and/or Libertas.

360. The TVT MCA Loan arbitration agreement was an obligation incurred by the Debtor in favor of TVT Direct, TVT Capital and/or Libertas.

361. The TVT Direct arbitration agreement was the transfer of an interest in property to or for the benefit of TVT Direct, TVT Capital and/or Libertas.

362. The TVT Transfers set forth in Composite Exhibit G attached hereto were transfers of the Debtor's interests in property to or for the benefit of TVT Direct, TVT Capital and/or Libertas.

363. The Debtor incurred the obligations set forth in the Libertas MCA Loan and the Libertas MCA arbitration agreement in favor of Libertas and made the transfers of payments and the transfer of the Debtor's interest in rights under the Libertas MCA arbitration agreement within two or four-year period prior to the Petition Date with the actual intent to hinder, delay or defraud entities to which the Debtor was or became, on or after the date of the transfer, indebted.

364. The Debtor incurred the obligations set forth in the TVT Direct Loan and the TVT MCA Loan arbitration agreement in favor of TVT Direct, TVT Capital, and/or Libertas and made the transfers of payments and the transfer of the Debtor's interest in rights under the TVT MCA arbitration agreement within the two or four-year period prior to the Petition Date with the actual intent to hinder, delay or defraud entities to which the Debtor was or became, on or after the date of the transfer, indebted.

365. The Debtor received less than reasonably equivalent value in exchange for incurring the obligations in each of the Libertas MCA Loan, the Libertas MCA Loan arbitration agreement, the TVT MCA Loan, the TVT MCA arbitration agreement and for making the

transfers of payments under the Libertas MCA Loan, the transfer of rights under the Libertas MCA Loan arbitration agreement, the transfer of funds under the TVT MCA Loan, the transfers of rights under the TVT MCA Loan arbitration agreement, intended to incur or believed or reasonably should have believed that Debtor would incur, debts beyond the Debtor's ability to pay as they became due.

366. American Express Travel Related Services Co., Inc. is a holder of a claim that is allowable against the Debtor which would have standing to assert a claim for relief under Section 726.105(1)(b) of the Florida Statutes. The transfers are avoidable under § 544 of the Bankruptcy Code and § 726.105(1)(b) of the Florida Statutes.

**WHEREFORE**, the Trustee respectfully requests this Court enter a judgment against the Defendants:

a) Finding the Libertas MCA Loan was an obligation incurred by the Debtor in favor of Libertas and was fraudulent pursuant to Section 726.105(1)(b) of the Florida Statutes and/or 11 U.S.C. § 548(a)(1)(B);

b) Finding the Libertas MCA arbitration agreement was an obligation incurred by the Debtor in favor of Libertas and was fraudulent pursuant to 726.105(1)(b) of the Florida Statutes and/or 11 U.S.C. § 548(a)(1)(B);

c) Finding that the Libertas MCA arbitration agreement was a transfer of property of the Debtor which was fraudulent pursuant to Section 726.105(1)(a) of the Florida Statutes and/or11 U.S.C. § 548(a)(1)(B);

d) Finding that the payments to Libertas as set forth in Exhibit E attached hereto and the transfer of property in the Libertas MCA arbitration agreement were fraudulent transfers pursuant to Fla. Stat. § 726.105(1)(b) and/or 11 U.S.C. § 548(a)(1);

e) Finding the TVT MCA Loan was an obligation incurred by the Debtor in favor of TVT Direct, TVT Capital, and/or Libertas and said obligation was fraudulent pursuant to Section 726.105(1)(b) of the Florida Statutes and/or 11 U.S.C. § 548(a)(1)(B);

f) Finding the TVT MCA Loan arbitration agreement was an obligation incurred by the Debtor in favor of TVT Direct, TVT Capital and/or Libertas and was fraudulent pursuant to 726.105(1)(b) of the Florida Statutes and/or 11 U.S.C. § 548(a)(1)(B);

g) Finding that the TVT MCA Loan arbitration agreement was a transfer of property of the Debtor which was fraudulent pursuant to Section 726.105(1)(a) of the Florida Statutes and/or11 U.S.C. § 548(a)(1)(B);

h) Finding that the TVT transfers of payments to TVT Direct, TVT Capital, and/or Libertas as set forth in Exhibit G attached hereto were fraudulent transfers pursuant to Section 726.105(1)(b) of the Florida Statutes and/or 11 U.S.C. 548(a)(1)(B);

i) Avoiding the obligations to Libertas and transfers to Libertas described above pursuant to § 544 of the Bankruptcy Code and § 726.105(1)(b) of the Florida Statutes and avoiding all obligations and transfers by the Debtor to Libertas in addition to those specifically referred to in this Complaint, if any, which are avoidable under § 726.105(1)(b) of the Florida Statutes;

j) Avoiding the obligations to Libertas and transfers to Libertas Transfers described above pursuant §548(a)(1)(b) of the Bankruptcy Code and avoiding all obligations and transfers by the Debtor to Libertas in addition to those specifically referred to in this Complaint, if any, which are avoidable under §548(a)(1)(b) of the Bankruptcy Code;

k) Avoiding the obligations to TVT Direct and transfers described above pursuant to § 544 of the Bankruptcy Code and § 726.105(1)(b) of the Florida Statutes and avoiding all obligations and transfers by the Debtor to TVT Direct, TVT Capital, and/or Libertas in addition to

those specifically referred to in this Complaint, if any, which are avoidable under § 726.105(1)(b) of the Florida Statutes;

l) Avoiding the obligations to TVT Direct, TVT Capital and/or Libertas and the transfers described above pursuant §548(a)(1)(b) of the Bankruptcy Code and avoiding all obligations and transfers by the Debtor to TVT Capital, TVT Direct, or Libertas in addition to those specifically referred to in this Complaint, if any, which are avoidable under §548(a)(1)(b) of the Bankruptcy Code;

m) Disallowing all claims by or in favor of Libertas, TVT Direct, and/or TVT Capital for any amounts owed to Libertas and TVT Direct and/or Libertas according to the Debtor's schedules, pursuant to Section 502(d) of the Bankruptcy Code unless and until Libertas, TVT Direct, and/or TVT Capital have returned to the Debtor's estate the amount for which Libertas, TVT Direct, and/or TVT Capital is liable; and

n) Granting such other and further relief as the Court deems proper.

## COUNT 9
## <u>RECOVERY OF AVOIDED TRANSFERS PURSUANT TO 11 U.S.C. § 550</u>

367. The Plaintiff realleges paragraphs 1 through 153 and Counts 6 through 8 above, including all relief sought therein, and incorporates those allegations by reference.

368. To the extent the transfers to or for the benefit of Libertas and TVT Direct, TVT Capital, and/or Libertas as set forth in Exhibits E and G attached hereto were transfers of the Debtor's interests in property to or for the benefit of Libertas, TVT Direct, and/or TVT Capital and the transfers are avoided pursuant to Section 544 of the Bankruptcy Code and Sections 726.105(1)(a), 726.105(1)(b), and/or 726.106(1) of the Florida Statutes, or pursuant to section 548 of the Bankruptcy Code, the Plaintiff is entitled to recover the aforementioned transfers from

Libertas, TVT Direct, TVT Capital, and/or Kinetic the value thereof pursuant to Section 550(a) of the Bankruptcy Code.

369. Libertas, TVT Capital, and/or TVT Direct are the initial or subsequent transferees of the aforementioned transfers and/or the person for whose benefit the transfers were made.

370. To the extent Libertas, TVT Capital, and/or TVT Direct are deemed to be mediate or immediate transferees, the transfers are recoverable because Libertas and/or TVT Direct provided no value in exchange for the transfers, Libertas, TVT Capital and/or TVT Direct did not receive the transfers in good faith, and Libertas, TVT Capital, and/or TVT Direct had knowledge of the voidability of the aforementioned transfers.

**WHEREFORE**, the Plaintiff respectfully requests this Court enter a judgment against the Defendants:

a) Finding Libertas, TVT Direct, TVT Capital, and/or Kinetic to be the initial transferees of the Libertas Transfers and TVT Transfers as set forth in Exhibits E and G and/or the person for whose benefit the transfers were made;

b) In the alternative finding Libertas, TVT Capital and/or TVT Direct to be the immediate or mediate transferee of the aforementioned transfers;

c) Ordering Libertas, TVT Direct, TVT Capital, and/or Kinetic to turn over to the Plaintiff the aforementioned transfers or enter a money judgment in an amount equal to the value of the aforementioned transfers, plus interest at the applicable federal statutory rate and costs and expenses permissible by applicable law; and

d) Granting such other and further relief as the Court deems proper.

**COUNT 10**
**BREACH OF CONTRACT**

371. Plaintiff realleges paragraphs 1 through 153 above and incorporates those allegations by reference.

372. This is a Count for breach of contract, if the Court finds that the MCA Loans are not void under applicable New York.

373. All conditions precedent in bringing this breach of contract action were fulfilled by the Plaintiff or waived by Libertas, TVT Direct, and/or TVT Capital.

374. Each of the MCA Loans limit the ability of Libertas and TVT Direct and/or TVT Capital to collect on "Future Receipts" of the Debtor.

375. The ACH on the MCA Lonas were for the accounts in the name of the Debtor.

376. The funds in Debtor's accounts did not constitute Future Receipts as defined in each of the MCA Loans. The funds in the accounts of the Debtor comprised of loans obtained by the Debtor.

377. Libertas, TVT Direct, and/or TVT Capital breached each of the MCA Loans by collecting funds held by the Debtor that were loans rather than the Debtor's Future Receipts. This constituted a material breach of each of the MCA Loans

378. As a result of the breach of each of the MCA Loans, the Debtor was damaged.

WHEREFORE, the Plaintiff requests that this Court enter a final money judgment against Libertas, TVT Direct, and TVT Capital and:

a) Find that Libertas, TVT Direct, and/or TVT Capital each breached their respective MCA Loans by receiving money from the Debtor from funds unrelated to the Debtor's Future Receipts.

b) Award any further relief to the Plaintiff as the Court deems just and proper, including the Plaintiff's attorneys' fees and costs as the prevailing party.

**COUNT 11**
**ACTION AGAINST DEFENDANTS FOR VIOLATION OF FLORIDA INTEREST, USURY, AND LENDING PRACTICES FLA. STAT. CHAPT. 687**

379. Plaintiff realleges paragraphs 1 through 153 above and incorporates those allegations by reference.

380. This is an action for damages brought pursuant to Chapter §687. Fla. Stat. §687.071; §687.02(1) and Fla. Stat. §687.147(1).

381. TVT Direct is a creditor under Fla. Stat. §687.071(b) as TVT Direct either made an extension of credit or was a person that claimed by, under, or through such person.

382. TVT Capital is a creditor under Fla. Stat. §687.071(b) as TVT Direct either made an extension of credit or was a person that claimed by, under, or through such person.

383. Libertas is a creditor under Fla. Stat. §687.071(b) as Libertas either made an extension of credit or was a person that claimed by, under, or through such person.

384. The Debtor was a "debtor" within the meaning of Fla. Stat. §687.071(c) as it was a person that received an extension of credit.

385. TVT Direct was a loan shark within the meaning of Fla. Stat. §687.071(g)(2) or (3) in that TVT Direct unlawfully lent money to the Debtor and willfully and knowingly charged, took or received interest at a rate exceeding, at least, 25 percent whether directly, indirectly or conspired to do so.

386. TVT Capital was a loan shark within the meaning of Fla. Stat. §687.071(g)(2) or (3) in that TVT Capital unlawfully lent money to the Debtor and willfully and knowingly charged, took or received interest at a rate exceeding, at least, 25 percent whether directly, indirectly or conspired to do so.

387. Libertas was a loan shark within the meaning of Fla. Stat. §687.071(g)(2) or (3) in that Libertas unlawfully lent money to the Debtor and willfully and knowingly charged, took or received interest at a rate exceeding, at least, 25 percent whether directly, indirectly or conspired to do so.

388. Libertas MCA Loan memorializes a loan between Libertas, as the lender, and the Debtor as the borrower. The Libertas MCA Loan charges more than 25% interest on the loan.

389. The TVT MCA Loan memorializes a loan between TVT Direct and/or TVT Capital, as the lender(s), and the Debtor as the borrower. The TVT MCA Loan charges more than 25% interest on the loan.

390. Noble Financial and Matthew Cohen was a broker for Libertas in the Libertas MCA Loan.

391. TVT Capital was either a lender or a broker in the TVT MCA Loan.

392. Kinetic Funding a servicer for the Libertas MCA Loan.

393. Libertas, Noble Funding, Matthew Cohen, Kinetic Funding directly or indirectly or conspired together to willfully and knowingly charge, take or receive interest under the Libertas MCA Loan in an amount in excess of 25 %. As a result, the Debtor was damaged in the amounts paid by the Debtor on account of the Libertas MCA Loan.

394. TVT Direct, TVT Capital and Libertas directly or indirectly or conspired together to willfully and knowingly charge, take, or receive interest under the TVT MCA Loan in an amount in excess of 25%. As a result, the Debtor was damaged in amount of paid by the Debtor on account of the TVT MCA Loan.

395. The Libertas MCA Loan was criminally usurious loan under New York which is the choice of law under the Libertas MCA Loan. Because the Libertas MCA Loan is not otherwise specifically allowed by law, Florida law applies to this cause of action.

396. The TVT MCA Loan was a criminally usurious loan under Florida law which is the choice of law under the TVT MCA Loan. Because the TVT MCA Loan is not otherwise specifically allowed by law, Florida law applies to this cause of action.

397. TVT Direct and Libertas have filed a proof of claim in this bankruptcy seeking payment of additional sums. [POC # 10-1]. The Plaintiff is entitled to an order determining the amounts are not due as the principal and interest are forfeited.

398. Pursuant to Fla. Stat. § 687.147(1), the Plaintiff is entitled to recover actual damages, punitive damages, and attorneys' fees and costs.

399. Pursuant to Fla. Stat. §§ 687.071(7), the Plaintiff is entitled to recover, at least, the amount of the payments made under the Libertas MCA Loan.

400. Pursuant to Fla. Stat. §§ 687.071(7), the Plaintiff is entitled to recover, at least, the amount of the payments made under the TVT MCA Loan.

**WHEREFORE**, the Plaintiff requests judgment in her favor and against Libertas, TVT Direct, TVT Capital, Noble Financial, Matthew Cohen, for:

(a) Against Libertas, Noble Financial and Matthew Cohen, jointly and severally, damages awardable to the Plaintiff pursuant under Chapter 687 of the Florida statutes, including, but not limited to, all amounts paid by the Debtor on account of the Libertas MCA Loan.

(b) Against TVT Direct, TVT Capital, and Libertas, jointly and severally, damages awardable to the Plaintiff pursuant to Chapter 687 of the Florida Statutes, including, but not limited to, all amounts paid by the Debtor on account of the TVT MCA Loan.

(c) Attorney's fees and costs that the Plaintiff has incurred pursuant to Fla. Stat. § 687.147; and

(d) Such other relief the court deems just and proper.

Respectfully submitted this 13th day of March 2025.

**FURR AND COHEN, P.A.**
*Special Counsel for Trustee*
2255 Glades Road, Suite 419A
Boca Raton, FL 33431
Telephone: (561) 395-0500
Facsimile: (561) 338-7532

BY: /s/ *Jason S. Rigoli*
Alan R. Crane, Esq.
Florida Bar No.: 0963836
E-mail: acrane@furrcohen.com
Jason S. Rigoli, Esq.
Florida Bar No.: 91990
E-mail: jrigoli@furrcohen.com

**Law Office of**
**Nicole Testa Mehdipour, p.a.**
*Counsel for Chapter 7 Trustee*
6278 N. Federal Highway, Suite 408
Fort Lauderdale, FL 33308
Tel: (954) 858-5880 Fax: (954) 208-0888

By: */s/ Nicole Testa Mehdipour*
Nicole Testa Mehdipour
Florida Bar No. 177271
Nicole.Mehdipour@ntmlawfirm.com