**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | EXCELL Auto Group, Inc. |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court | **Southern District of Florida** |
| Case number: | **22−12790** |

FILED
**U.S. Bankruptcy Court**
**Southern District of Florida**
6/10/2022
**Joseph Falzone, Clerk**

# Official Form 410
# Proof of Claim

**04/19**

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

## Part 1: Identify the Claim

**1. Who is the current creditor?**

TVT Direct Funding LLC
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor: Libertas Funding LLC

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
|---|---|
| TVT Direct Funding LLC | |
| Name | Name |
| 65 West 36th Street, Floor 12<br>New York, NY 10018 | |
| Contact phone 2037170565 | Contact phone |
| Contact email jessica.patrovic@libertasfunding.com | Contact email |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) ______ Filed on ______ MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing?



EXHIBIT
F

## Part 2: Give Information About the Claim as of the Date the Case Was Filed

**6. Do you have any number you use to identify the debtor?**

- [x] No
- [ ] Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____________

**7. How much is the claim?**

$ 893614.02

**Does this amount include interest or other charges?**

- [x] No
- [ ] Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

Breach of Agreement for Purchase and Sale of Receivables

**9. Is all or part of the claim secured?**

- [ ] No
- [x] Yes. The claim is secured by a lien on property.

**Nature of property:**

- [ ] Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410−A) with this *Proof of Claim*.
- [ ] Motor vehicle
- [x] Other. Describe: As Described in Agreement and UCC−1

**Basis for perfection:** UCC−1 Financing Stmt.

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $ 893614.02

**Amount of the claim that is secured:** $ 893614.02

**Amount of the claim that is unsecured:** $ 0.00 (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $ 893614.02

**Annual Interest Rate** (when case was filed) 0 %

- [x] Fixed
- [ ] Variable

**10. Is this claim based on a lease?**

- [x] No
- [ ] Yes. **Amount necessary to cure any default as of the date of the petition.** $ ____________

**11. Is this claim subject to a right of setoff?**

- [x] No
- [ ] Yes. Identify the property: ____________

| | | |
|---|---|---|
| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☑ No<br>☐ Yes. *Check all that apply*: | **Amount entitled to priority** |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies | $ |
| | * Amounts are subject to adjustment on 4/1/22 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date 6/10/2022
MM / DD / YYYY

/s/ Jessica Patrovic
Signature

Print the name of the person who is completing and signing this claim:

Name: Jessica Patrovic
First name Middle name Last name

Title: VP, Chief of Staff

Company: TVT Direct Funding LLC
Identify the corporate servicer as the company if the authorized agent is a servicer

Address: 65 West 36th Street, Floor 12
Number Street
New York, NY 10018-65
City State ZIP Code

Contact phone 2037170565 Email jessica.patrovic@libertasfunding.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | CHAPTER 7 |
| **EXCELL AUTO GROUP, INC.,** | ) | Bankruptcy No. 22-12790-EPK |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |

**ADDENDUM TO PROOF OF CLAIM OF**
**<u>TVT DIRECT FUNDING, LLC</u>**

This claim, filed on behalf of TVT Direct Funding, LLC, is filed consistent with the terms of that certain Agreement for the Purchase and Sale of Future Receipts dated December 14, 2021:

| | | |
|---|---|---|
| Purchased Amount | $ | 1,430,000.00 |
| Remitted Amount | $ | <u>536,665.98</u> |
| Balance of Purchased Amount | $ | 893,614.02* |

* TVT Direct Funding, LLC reserves the right to seek all additional amounts, including, costs and legal fees, recoverable under Bankruptcy Code section 506, the Agreement for the Purchase and Sale of Future Receipts or otherwise at law or in equity.

DocuSign Envelope ID: 632647CB-0ED1-4B0A-8B03-D08D114CBCD5

TVT CAPITAL

# Agreement for the Purchase and Sale of Future Receipts

**Seller's Legal Name:** EXCELL AUTO GROUP, INC.ET AL SEE ADDENDUM

**Form of Business Entity:** [ ] Corporation; [ ] Limited Liability Company; [ ] Partnership; [ ] Limited Partnership; [ ] Limited Liability Partnership; [ ] Sole Proprietorship; [ ]Other: ____________

**Street Address:** 10010 CLINT MOORE RD, City: BOCA RATON, State: FL; Zip: 33487

**Mailing Address:** ____________, City: ________, State: ______; Zip: ______

**Primary Contact Name:** SCOTT ZANKL Title: ______

**Time in Business:** ____________ **Federal Tax ID Number:** [redacted]

**Purchase Price:** $1,000,000.00 **Purchased Amount:** $1,430,000.00 **Average Monthly Sales:** $________

**Specified Percentage:** 18 % **Origination Fee:** $ 50,000.00 (to be deducted from the Purchase Price)

**Initial Daily Amount:** $ $7,944.44 (Average Monthly Sales x Specified Percentage / Average Business Days in a Calendar Month)

**Account for the Deposit of All Future Receipts:** Bank: ____________

Account No: ____________

Effective, December 14, 20 21 Seller, identified above, hereby sells, assigns and transfers to TVT DIRECT FUNDING LLC, located at 65 W 36TH ST FL 12, NEW YORK, NY 10018 ("Buyer"), without recourse, the Specified Percentage of the proceeds of each future sale made by Seller (collectively "Future Receipts") until Buyer has received the Purchased Amount. "Future Receipts" includes all payments made by cash, check, ACH or other electronic transfer, credit card, debit card, bank card, charge card (each such card shall be referred to herein as a "Payment Card") or other form of monetary payment in the ordinary course of Seller's business. As payment for the Purchased Amount, Buyer will deliver to Seller the Purchase Price, shown above, minus any Origination Fee shown above. Seller acknowledges that it has no right to repurchase the Purchased Amount from Buyer.

Both parties agree that the obligation of Buyer under this Agreement will not be effective unless and until Buyer has completed its review of the Seller and has accepted this Agreement by delivering the Purchase Price, minus any Origination Fee. Prior to accepting this Agreement, Buyer may conduct a processing trial to confirm its access to the Account and the ability to withdraw the Initial Daily Amount. If the processing trial is not completed to the satisfaction of Buyer, Buyer will refund to Seller all funds that were obtained by Buyer during the processing trial.

**Agreement of Seller:** By signing below Seller agrees to the terms and conditions contained in this Agreement, including those terms and conditions on the following pages, and further agrees that this transaction is for business purposes and not for personal, family, or household purposes.

Seller: EXCELL AUTO GROUP, INC.ET AL SEE ADDENDUM

Agreed to by: DocuSigned by: Scott Zankl 763D464860D2410... (Signature), its Pres. (Title)

Seller: EXCELL AUTO GROUP, INC.ET AL SEE ADDENDUM

Agreed to by: DocuSigned by: KRISTEN ZANKL 2DE1E978605F487... (Signature), Its VP (Title)

Buyer: **TVT DIRECT FUNDING LLC**

Agreed to by: DocuSigned by: Randy Saluck (Signature), Its RS (Title)

Initials: ________ Initials: ________

**Agreement of Each Owner:** Each Owner signing below agrees to the terms of the Credit Report Authorization below.

SCOTT ZANKL (Print Name); DocuSigned by: Scott Zankl 763D464660D2440... (Signature);

KRISTEN ZANKL (Print Name); DocuSigned by: KRISTEN ZANKL 2DE1E978605F487... (Signature);

1. **Delivery of Purchased Amount:** Seller must deposit all Future Receipts into the single business banking account specified above, which may not be used for any personal, family or household purposes (the "Account") and must instruct Seller's credit card processor, which must be approved by Buyer (the "Processor") to deposit all Payment Card receipts of Seller into the Account. Seller agrees not to change the Account or add an additional Account without the express written consent of Buyer. Seller authorizes Buyer to debit the Daily Amount from the Account each business day by either ACH or electronic check. Seller will provide Buyer with all required access codes and agrees not to change them without prior written consent from Buyer. Seller will provide an appropriate ACH authorization to Buyer. Seller understands that it is responsible for either ensuring that the Daily Amount is available in the Account each business day or advising Buyer prior to each daily withdrawal of a shortage of funds. Otherwise, Seller will be responsible for any fees incurred by Buyer resulting from a rejected electronic check or ACH debit attempt, as set forth on Appendix A. Buyer is not responsible for any overdrafts or rejected transactions that may result from Buyer's debiting any amount authorized under the terms of this Agreement. Seller understands that the foregoing ACH authorization is a fundamental condition to induce Buyer to accept the Agreement. Consequently, such authorization is intended to be irrevocable.

2. **Seller May Request Changes to the Daily Amount:** The initial Daily Amount is intended to represent the Specified Percentage of Seller's daily Future Receipts. For as long as no Event of Default has occurred, once each calendar month, Seller may request that Buyer adjust the Daily Amount to more closely reflect the Seller's actual Future Receipts times the Specified Percentage. Seller agrees to provide Buyer any information requested by Buyer to assist in this reconciliation. No more often than once each calendar month, Buyer may adjust the Daily Amount on a going-forward basis to more closely reflect the Seller's actual Future Receipts times the Specified Percentage. Buyer will give Seller notice prior to any such adjustment. After each adjustment made pursuant to this paragraph, the new dollar amount shall be deemed the Daily Amount for a fixed period of time (the "Fixed Period"), which Buyer shall determine at its sole discretion based on information, or the lack thereof, provided by Seller to Buyer. After the expiration of the Fixed Period, the Daily Amount shall automatically revert back to the initial Daily Amount.

3. **Daily Amount Upon Default.** Upon the occurrence of an Event of Default, the Daily Amount shall equal 100% of the unremitted balance of the Purchased Amount, plus all fees and other amounts then due.

4. **Sale of Future Receipts (THIS IS NOT A LOAN):** Seller is selling a portion of a future revenue stream to Buyer at a discount, not borrowing money from Buyer. There is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by Buyer. If Future Receipts are remitted more slowly than Buyer may have anticipated or projected because Seller's business has slowed down, or if the full Purchased Amount is never remitted because Seller's business went bankrupt or otherwise ceased operations in the ordinary course of business, and Seller has not breached this Agreement, Seller would not owe anything to Buyer and would not be in breach of or default under this Agreement. Buyer is buying the Purchased Amount of Future Receipts knowing the risks that Seller's business may slow down or fail, and Buyer assumes these risks based on Seller's representations, warranties and covenants in this Agreement that are designed to give Buyer a reasonable and fair opportunity to receive the benefit of its bargain. By this Agreement, Seller transfers to Buyer full and complete ownership of the Purchased Amount of Future Receipts and Seller retains no legal or equitable interest therein. Seller agrees that it will treat Purchase Price and Purchased Amount in a manner consistent with a sale in its accounting records and tax returns. Seller agrees that Buyer is entitled to audit Seller's accounting records upon reasonable Notice in order to verify compliance. Seller waives any rights of privacy, confidentiality or taxpayer privilege in any such litigation or arbitration in which Seller asserts that this transaction is anything other than a sale of future receipts.

5. **Power of Attorney.** Seller irrevocably appoints Buyer as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to Buyer from Seller, or in the case of a violation by Seller of this Agreement or the occurrence of an Event of Default under Section 15 hereof by Seller, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Future Receipts; (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign Seller's name on any invoice, bill of lading, or assignment directing customers or account debtors to direct payables to Buyer; (v) to file any claims or take any action or institute any proceeding which Buyer may deem necessary for the collection of any of the remaining Purchased Amount of the Future Receipts, or otherwise to enforce its rights with respect to delivery of the Purchased Amount; and/or (vi) to contact any Processor of Seller and to direct such Processor(s) to deliver directly to Buyer all or any portion of the amounts received by such Processor(s) and to provide any information regarding Seller

Initials: DS SZ Initials: DS KZ

requested by Buyer. Each Processor may rely on the previous sentence as written authorization of Seller to provide any information requested by Buyer. Each Processor is hereby irrevocably authorized and directed by Seller to follow any instruction of Buyer without inquiry as to Buyer's right or authority to give such instructions. Seller acknowledges the terms of the preceding sentence and agrees not to (a) interfere with Buyer's instructions on a Processor's compliance with this Agreement or (b) request any modification thereto without Buyer's prior written consent.

6. **Fees and Charges:** Other than the Origination Fee, if any, set forth above, Buyer is NOT CHARGING ANY ORIGINATION OR BROKER FEES to Seller. If Seller is charged another such fee, it is not being charged by Buyer. A list of all fees and charges applicable under this Agreement is contained in Appendix A.

7. **Credit Report and Other Authorizations:** Seller and each of the Owners signing above authorize Buyer, its agents and representatives and any credit reporting agency engaged by Buyer, to (i) investigate any references given or any other statements or data obtained from or about Seller or any of its Owners for the purpose of this Agreement, (ii) obtain consumer and business credit reports on the Seller and any of its Owners, and (iii) to contact personal and business references provided by the Seller in the Application, at any time now or for so long as Seller and/or Owners continue to have any obligation owed to Buyer as a consequence of this Agreement or for Buyer's ability to determine Seller's eligibility to enter into any future agreement with Buyer.

8. **Authorization to Contact Current and Prior Banks:** Seller hereby authorizes Buyer to contact any current or prior bank of the Seller in order to obtain whatever information it may require regarding Seller's transactions with any such bank. Such information may include but is not limited to, information necessary to verify the amount of Future Receipts previously processed on behalf of Seller and any fees that may have been charged by the bank. In addition, Seller authorizes Buyer to contact any current or prior bank of the Seller for collections and in order to confirm that Seller is exclusively using the Account identified above, or any other account approved by Buyer, for the deposit of all business receipts.

9. **Financial Information.** Seller authorizes Buyer and its agents to investigate its financial responsibility and history, and will provide to Buyer any authorizations, bank or financial statements, tax returns, etc., as Buyer deems necessary in its sole discretion prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed acceptable as an authorization for release of financial and credit information. Buyer is authorized to update such information and financial and credit profiles from time to time as it deems appropriate. Seller waives, to the maximum extent permitted by law, any claim for damages against Buyer or any of its affiliates relating to any investigation undertaken by or on behalf of Buyer as permitted by this Agreement or disclosure of information as permitted by this Agreement.

10. **Transactional History.** Seller authorizes all of its banks and brokers and Payment Card processors to provide Buyer with Seller's banking, brokerage and/or processing history to determine qualification or continuation in this program, or for collections upon an Event of Default.

11. **Publicity.** Seller hereby authorizes Buyer to use its name in listings of clients and in advertising and marketing materials.

12. **Application of Amounts Received by Buyer.** Buyer reserves the right to apply amounts received by it under this Agreement to any fees or other charges due to Buyer from Seller prior to applying such amounts to reduce the amount of any outstanding Purchased Amount.

13. **Representations, Warranties and Covenants of Seller:**

13.1. **Good Faith, Best Efforts and Due Diligence.** Seller will conduct its business in good faith and will use its best efforts to continue its business at least at its current level, to ensure that Buyer obtains the Purchased Amount.

13.2. **Stacking Prohibited.** Seller shall not enter into any Seller cash advance or any loan agreement that relates to or involves its Future Receipts with any party other than Buyer for the duration of this Agreement. Buyer may share information regarding this Agreement with any third party in order to determine whether Seller is in compliance with this provision.

13.3. **Financial Condition and Financial Information.** Any bank statements and financial statements of Seller that have been furnished to Buyer, and future statements that will be furnished to Buyer, fairly represent the financial condition of Seller at such dates, and Seller will notify Buyer immediately if there are material adverse changes, financial or otherwise, in the condition or operation of Seller or any change in the ownership of Seller. Buyer may request statements at any time during the performance of this Agreement and the Seller shall provide them to Buyer within five business days. Furthermore, Seller represents that all documents, forms and recorded interviews provided to or with Buyer are true, accurate and complete in all respects, and accurately reflect Seller's financial condition and results of operations. Seller further agrees to authorize the release of any past or future tax returns to Seller.

Initials: SZ Initials: KZ

13.4. **Governmental Approvals**. Seller is in compliance and shall comply with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged and/or will engage in hereafter.

13.5. **Authority to Enter Into This Agreement**. Seller and the person(s) signing this Agreement on behalf of Seller, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

13.6. **Change of Name or Location or Sale or Closing of Business**. Seller will not conduct Seller's businesses under any name other than as disclosed to Buyer or change any of its places of business without prior written consent of Buyer. Seller will not sell, dispose, transfer or otherwise convey all or substantially all of its business or assets without (i) the express prior written consent of Buyer, and (ii) the written agreement of any purchaser or transferee assuming all of Seller's obligations under this Agreement pursuant to documentation satisfactory to Buyer. Except as disclosed to Buyer in writing, Seller has no current plans to close its business either temporarily, whether for renovations, repairs or any other purpose, or permanently. Seller agrees that until Buyer has received all of the Purchased Amount Seller will not voluntarily close its business on a temporarily basis for renovations, repairs, or any other purposes. This provision, however, does not prohibit Seller from closing its business temporarily if such closing is required to conduct renovations or repairs that are required by local ordinance or other legal order, such as from a health or fire inspector, or if otherwise forced to do so by circumstances outside of the control of Seller. Prior to any such closure, Seller will provide Buyer ten business days' notice to the extent practicable.

13.7. **No Pending or Contemplated Bankruptcy**. As of the date Seller executes this Agreement, Seller is not insolvent and does not contemplate and has not filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition brought or pending against Seller. Seller represents that it has not consulted with a bankruptcy attorney within six months prior to the date of this Agreement. Seller further warrants that it does not anticipate filing a bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it.

13.8. **Seller to Maintain Insurance.** Seller will possess and maintain insurance in such amounts and against such risks as are necessary to protect its business and will provide proof of such insurance to Buyer upon demand.

13.9. **Seller to Pay Taxes Promptly.** Seller will promptly pay all necessary taxes, including but not limited to employment and sales and use taxes.

13.10. **No Violation of Prior Agreements.** Seller's execution and performance of this Agreement will not conflict with any other agreement, obligation, promise, court order, administrative order or decree, law or regulation to which Seller is subject, including any agreement the prohibits the sale or pledge of Seller's future receipts.

13.11. **No Diversion of Receipts.** Seller will not permit any event to occur that could cause a diversion of any of Seller's Future Receipts from the Account to any other entity.

13.12. **Seller's Knowledge and Representation.** Seller represents warrants and agrees that it is a sophisticated business entity familiar with the kind of transaction covered by the Agreement; it was represented by counsel or had full opportunity to consult with counsel.

**14. Rights of Buyer:**

14.1 **Acknowledgment of Security Interest and Security Agreement.** The Future Receipts sold by Seller to Buyer pursuant to this Agreement are "accounts" or "payment intangibles" as those terms are defined in the Uniform Commercial Code as in effect in the state in which the Seller is located (the "UCC") and such sale shall constitute and shall be construed and treated for all purposes as a true and complete sale, conveying good title to the Future Receipts free and clear of any liens and encumbrances, from Seller to Buyer. To the extent the Future Receipts are "accounts" or "payment intangibles" then (i) the sale of the Future Receipts creates a security interest as defined in the UCC, (ii) this Agreement constitutes a "security agreement" under the UCC, and (iii) Buyer has all the rights of a secured party under the UCC with respect to such Future Receipts. Seller further agrees that, with or without an Event of Default, Buyer may notify account debtors, or other persons obligated on the Future Receipts, of Seller's sale of the Future Receipts and may instruct them to make payment or otherwise render performance to or for the benefit of Buyer.

14.2 **Financing Statements.** Seller authorizes Buyer to file one or more UCC-1 forms consistent with the UCC to give notice that the Purchased Amount of Future Receipts is the sole property of Buyer. The UCC filing may state that such sale is intended to be a sale and not an assignment for security and may state that the Seller is prohibited from obtaining any financing that impairs the value of the Future Receipts or Buyer's right to collect same. Seller authorizes Buyer to debit the Account for all costs incurred by Buyer associated with the filing, amendment or termination of any UCC filings.

14.3 **Right of Access.** In order to ensure that Seller is complying with the terms of this Agreement, Buyer shall have the right to (i) enter, without notice, the premises of Seller's business for the purpose of inspecting and checking Seller's transaction processing terminals to ensure the terminals are properly programmed to submit and or batch Seller's daily receipts to the Processor and to ensure that Seller has not violated any other provision of this Agreement, and (ii) Seller shall provide access to its employees and records and all other items as requested by Buyer, and (iii) have Seller provide information about its business operations, banking relationships, vendors, landlord and other information to allow Buyer to interview any relevant parties. Furthermore, Seller agrees to provide Buyer, at all times, "Live Contemporaneous Access" to all of its bank accounts in order for Buyer to evaluate Seller's compliance with the Agreement, and for collections in the Event of Default ("Seller's Accounts"). "Live Contemporaneous Access" shall be defined as: Seller, at all times and including but not limited to, providing Buyer with accurate login information necessary to access all of Seller's Accounts, such as usernames and passwords, answers to challenge questions, and security tokens.

14.4 **Phone Recordings and Contact.** Seller agrees that any call between Buyer and Seller, and their agents and employees may be recorded or monitored. Further, Seller agrees that (i) it has an established business relationship with Buyer, its employees and agents and that Seller may be contacted from time-to-time regarding this or other business transactions; (ii) that such communications and contacts are not unsolicited or inconvenient; and (iii) that any such contact may be made at any phone number, emails address, or facsimile number given to Buyer by the Seller, its agents or employees, including cellular telephones.

15. **Events of Default**. The occurrence of any of the following events shall constitute an "Event of Default": (a) Seller interferes with Buyer's right to collect the Daily Amount; (b) Seller violates any term or covenant in this Agreement; (c) Seller uses multiple depository accounts without the prior written consent of Buyer; (d) Seller changes its depositing account or its payment card processor without the prior written consent of Buyer; (e) Seller defaults under any of the terms, covenants and conditions of any other agreement with Buyer; (f) Seller fails to provide timely notice to Buyer such that: (i) within any 30 day period three or more ACH transactions attempted by Buyer are rejected by Seller's bank and/or; (ii) three or more consecutive ACH transactions attempted by Buyer are rejected by Seller's bank; or (g) Seller's failure to cure, within 24 hours, any disruptions and/or any inability Buyer may have in maintaining Live Contemporaneous Access to Seller's Accounts pursuant to Section 14.3 of this Agreement.

16. **Remedies**. If any Event of Default occurs, Buyer may proceed to protect and enforce its rights including, but not limited to, the following:

16.1. The unremitted balance of the Purchased Amount plus all fees and charges (including legal fees) due under this Agreement will become due and payable in full immediately as liquidated damages. Seller agrees that the loss or harm from an event of default is uncertain or difficult to prove with certainty, and that these amounts are a reasonable approximation of damages caused by such event of default.

16.2. Buyer may enforce the provisions of the Personal Guaranty of Performance against each Owner who signs it.

16.3. Buyer may proceed to protect and enforce its rights and remedies by arbitration or lawsuit. In any such arbitration or lawsuit, under which Buyer shall recover Judgment against Seller, Seller shall be liable for all of Buyer's costs of the lawsuit, including but not limited to all reasonable attorneys' fees and court costs. However, the rights of Buyer under this provision shall be limited as provided in the arbitration provision set forth below.

16.4. Seller shall pay to Buyer all reasonable costs associated with the Event of Default and the enforcement of Buyer's remedies, including but not limited to court costs and attorneys' fees.

16.5. Buyer may exercise and enforce its rights as a secured party under the UCC.

16.6. All rights, powers and remedies of Buyer in connection with this Agreement may be exercised at any time by Buyer after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

17. **Modifications; Agreements.** No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by Buyer.

Initials: SE Initials: KE [redacted]



TVT DIRECT FUNDING LLC

**18. Assignment**. Buyer may assign, transfer or sell its rights to receive the Purchased Amount or delegate its duties hereunder, either in whole or in part, with or without prior written notice to Seller.

**19. Notices.**

19.1. **Notices from Buyer to Seller**. Buyer may send any notices, disclosures, terms and conditions, other documents, and any future changes to Seller by regular mail or by e-mail, at Buyer's option and Seller consents to such electronic delivery. Notices sent by e-mail are effective when sent. Notices sent by regular mail become effective upon mailing to Seller's address set forth in this Agreement.

19.2. **Notices from Seller to Buyer**. Seller may send any notices to Buyer by e-mail only upon the prior written consent of Buyer, which consent may be withheld or revoked at any time in Buyer's sole discretion. Otherwise, any notices or other communications from Seller to Buyer must be delivered by certified mail, return receipt requested, to Buyer's address set forth in this Agreement. Notices sent to Buyer shall become effective only upon receipt by Buyer.

**20. Binding Effect and Governing Law**. This Agreement shall be binding upon and inure to the benefit of Seller, Buyer and their respective successors and assigns, except that Seller shall not have the right to assign its rights hereunder orany interest herein without the prior written consent of Buyer which consent may be withheld in Buyer's sole discretion. This Agreement shall be governed by and construed in accordance with the laws of the state of New York, without regards to any otherwise applicable conflicts of law principles.

**21. Survival of Representation, etc**. All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full.

**22. Interpretation**. All Parties hereto have reviewed this Agreement with an attorney of their own choosing and have relied only on their own attorney's guidance and advice. No construction determinations shall be made against either Party hereto as drafter.

**23. Entire Agreement and Severability**. This Agreement embodies the entire agreement between Seller and Buyer and supersedes all prior agreements and understandings relating to the subject matter hereof. In case any of the provisions in this Agreement is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein shall not in any way be affected or impaired.

**24. Facsimile Acceptance**. Facsimile signatures hereon, or other electronic means reflecting the party's signature hereto, shall be deemed acceptable for all purposes.

**25. Confidentiality**: The terms and conditions of this Agreement are proprietary and confidential unless required by law. Seller shall not disclose this information to anyone other than its attorney, accountant or similar service provider and then only to the extent such person uses the information solely for purpose of advising Seller and first agrees in writing to be bound by the terms of this Section. A breach entitles Buyer to damages and legal fees as well as temporary restraining order and preliminary injunction without bond.

**26. Monitoring, Recording, and Solicitations.**

26.1. **Authorization to Contact Seller by Phone.** Seller authorizes Buyer, its affiliates, agents and independent contractors to contact Seller at any telephone number Seller provides to Buyer or from which Seller places a call to Buyer, or any telephone number where Buyer believes it may reach Seller, using any means of communication, including but not limited to calls or text messages to mobile, cellular, wireless or similar devices or calls or text messages using an automated telephone dialing system and/or artificial voices or prerecorded messages, even if Seller incurs charges for receiving such communications.

26.2. **Authorization to Contact Seller by Other Means.** Seller also agree that Buyer, its affiliates, agents and independent contractors, may use any other medium not prohibited by law including, but not limited to, mail, e-mail and facsimile, to contact Seller. Seller expressly consents to conduct business by electronic means.

**27. <u>Waiver of Class Action; Waiver of Jury Trial</u>. By entering into this agreement, the parties agree that they may bring claims against the other only in their individual capacity, and THE PARTIES ARE EACH EXPRESSLY WAIVING ANY AND ALL RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER IN ANY CLASS ACTION, PUTATIVE OR PURPORTED CLASS ACTION, REPRESENTATIVE ACTION, PRIVATE ATTORNEY GENERAL ACTION, OR SIMILAR ACTION RELATING TO ANY CLAIMS (AS HEREINAFTER DEFINED), WHETHER BROUGHT UNDER STATE OR FEDERAL LAW. The parties are each expressly waiving any and all right to join or consolidate claims in any**

proceeding with those of any other person (except any obligors and guarantors of the same agreement). Further, BY ENTERING INTO THIS AGREEMENT, THE PARTIES ARE EACH EXPRESSLY WAIVING THEIR RESPECTIVE RIGHTS TO A JURY TRIAL FOR ALL CLAIMS. The term "Claim" means any claim, dispute, or controversy (whether based on contract, tort, statute, or otherwise, and whether seeking monetary or any form of non-monetary relief) arising out of or relating to this Agreement or the relationship between or among the parties (collectively, "Claims"). The term Claims is to be given its broadest possible meaning, and includes pre-existing, present, and future Claims, and Claims regarding the enforceability or scope of this waiver. For purposes of this waiver only, the term "party" means that party and all of its respective parents, subsidiaries, affiliates, predecessors, successors, assigns, agents, vendors, employees, officers, and directors. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.

**28. Arbitration**. Unless prohibited by federal law, each party to this Agreement shall have the option to require any and all Claims and disputes relating in any way to this Agreement or the parties' dealings with one another ("Claims"), except for Claims concerning the validity, scope or enforceability of this Arbitration Agreement, to be resolved through BINDING INDIVIDUAL ARBITRATION. This Arbitration Agreement involves interstate commerce and shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"), and not by state law.

28.1. In any claim or dispute to be resolved by arbitration, neither Seller nor Buyer will be able to have a court or jury trial or participate in a class action or class arbitration. Other rights that Seller or Buyer would have if Seller or Buyer went to court will not be available or will be more limited in arbitration, including the right to appeal. Seller and buyer each understand and agree that by allowing each other to require Claims to be resolved through individual arbitration, SELLER AND BUYER ARE EACH WAIVING THE RIGHT TO A COURT OR JURY TRIAL. ALL ARBITRATIONS SHALL BE CONDUCTED ON AN INDIVIDUAL BASIS, AND NOT AS A CLASS ACTION, REPRESENTATIVE ACTION, CLASS ARBITRATION OR ANY SIMILAR PROCEEDING. The arbitrator(s) may not consolidate the claims of multiple parties.

28.2. Arbitrations shall be administered by the American Arbitration Association ("AAA") pursuant to the applicable AAA rules in effect at the time the arbitration is initiated. Seller and Buyer may obtain information about arbitration, arbitration procedures and fees from AAA by calling 800-778-7879 or visiting www.adr.org. If AAA is unable or unwilling to arbitrate a dispute, then the dispute may be referred to any other arbitration organization or arbitrator the parties agree upon in writing, or to an alternative arbitration organization or arbitrator determined pursuant to Section 5 of the FAA. The arbitration shall take place in New York, New York or in the federal judicial district where Seller is located, at the option of Seller. The arbitrator shall apply applicable substantive law consistent with the FAA and applicable statutes of limitations and shall be authorized to award any relief that would have been available in court, provided that the arbitrator's authority to resolve claims and make awards is limited to Seller, Buyer, and Guarantor alone except as otherwise specifically stated herein. No arbitration award or decision will have any preclusive effect as to issues or claims in any dispute with anyone who is not a named party to the arbitration. The arbitrator's decision shall be final and binding.

28.3. Seller and Buyer each may exercise any lawful rights to seek provisional remedies or self-help, without waiving the right to arbitrate by doing so. Notwithstanding any other provision of this Agreement, if the foregoing class action waiver and prohibition against class arbitration is determined to be invalid or unenforceable, then this entire Arbitration Agreement shall be void. If a claim is brought seeking public injunctive relief and a court determines that the restrictions in the Arbitration Agreement prohibiting the arbitrator from awarding relief on behalf of third parties are unenforceable with respect to such Claim (and that determination becomes final after all appeals have been exhausted), the claim for public injunctive relief will be determined in court and any individual claims will be arbitrated. In such a case, the court shall stay the claim for public injunctive relief until the arbitration award pertaining to individual relief has been confirmed and reduced to judgment in court. In no event will a claim for public injunctive relief be arbitrated. If any other portion of this Arbitration Agreement is deemed invalid or unenforceable, it shall not invalidate the remaining portions of this Arbitration Agreement. This Arbitration Agreement will survive the termination of this Agreement, the fulfillment or default of Seller's obligations under this Agreement, and/or Seller's or Buyer's bankruptcy or insolvency (to the extent permitted by applicable law).

28.4. **SELLER HAS THE RIGHT TO REJECT THIS ARBITRATION AGREEMENT, BUT SELLER MUST EXERCISE THIS RIGHT PROMPTLY. If Seller does not wish to be bound by this agreement to arbitrate, Seller must notify Buyer in writing within thirty (30) days after the date Seller signs this Agreement. Seller must send its request by certified mail (return receipt requested) to TVT DIRECT FUNDING LLC, 65 W 36TH ST FL 12, NEW YORK, NY 10018, ATTENTION: LEGAL DEPARTMENT. The request must include Seller's full name, address, account number, and the statement "I reject the Arbitration Agreement contained in my Agreement of Purchase and Sale of Future Receipts." If Seller exercises the right to reject arbitration, the other terms of this Agreement shall remain in full force and effect as if Seller had not rejected arbitration.**

29. **SERVICE OF PROCESS. IN ADDITION TO THE METHODS OF SERVICE ALLOWED BY THE New York RULES OF CIVIL PROCEDURE, SELLER HEREBY CONSENTS TO SERVICE OF PROCESS UPON IT BY REGISTERED OR CERTIFIED MAIL, RETURN RECEIPT REQUESTED, SERVICE HEREUNDER SHALL BE COMPLETE UPON SELLER'S ACTUAL RECEIPT OF PROCESS OR UPON BUYER'S RECEIPT OF THE RETURN THEREOF BY THE UNITED STATES POSTAL SERVICE AS REFUSED OR UNDELIVERABLE. SELLER MUST PROMPTLY NOTIFY BUYER, IN WRITING, OF EACH AND EVERY CHANGE OF ADDRESS TO WHICH SERVICE OF PROCESS CAN BE MADE. SERVICE BY BUYER TO THE LAST KNOWN ADDRESS SHALL BE SUFFICIENT. SELLER WILL HAVE (30) CALENDAR DAYS AFTER SERVICE HEREUNDER IS COMPLETE IN WHICH TO RESPOND. FURTHERMORE, SELLER EXPRESSLY CONSENTS THAT ANY AND ALL NOTICE(S), DEMAND(S), REQUEST(S) OR OTHER COMMUNICATION(S) UNDER AND PURSUANT TO THIS AGREEMENT FOR THE PURCHASE AND SALE OF FUTURE RECEIVABLES SHALL BE DELIVERED IN ACCORDANCE WITH THE PROVISIONS OF THIS AGREEMENT FOR THE PURCHASE AND SALE OF FUTURE RECEIVABLES.**

## Appendix A – List of Fees and Charges

In addition to the Purchased Amount of Future Receipts, the Agreement provides that the following fees shall be applied:

1. **Underwriting Fee - $0.00**
2. **Non-Sufficient Funds (NSF) Fee - $35.00 each (Up to FOUR TIMES ONLY before a default is declared)**
3. **Stopped Fee - $135.00**
4. **ACH Processing Fee - $12.50**
5. **UCC Filing Fee- $150.00**
6. **Notary Fee- $25.00**
7. **Default Fee - $2,500.00**
8. **Funding Fee: $50,000.00**

# PERSONAL GUARANTY OF PERFORMANCE

This Personal Guaranty of Performance (this "Guaranty") is executed as of December14 , 20 21 , by SCOTT ZANKL KRISTEN ZANKL (the "Guarantor"), for the benefit of TVT DIRECT FUNDING LLC ("Buyer").

Capitalized terms used herein, but not defined, shall have the meanings assigned to them in the Purchase Agreement (as hereinafter defined).

## RECITALS

**A.** Pursuant to that Agreement for the Purchase and Sale of Future Receipts (the "Purchase Agreement"), dated of even date herewith, between Buyer and ("Seller"), Buyer has purchased Future Receipts of Seller.

**B.** Buyer is not willing to enter into the Purchase Agreement unless Guarantor irrevocably, absolutely and unconditionally guarantees prompt and complete performance to Buyer of all of the obligations of Seller; and

**C.** Guarantor will directly benefit from Buyer and Seller entering into the Purchase Agreement.

## AGREEMENT

As an inducement to Buyer to purchase the Future Receipts identified in the Purchase Agreement, and for other good and valuable consideration, the receipt and legal sufficiency of which are hereby acknowledged, Guarantor does hereby agree as follows:

**1. Defined Terms:** All capitalized terms used and not otherwise defined herein shall have the meanings assigned to such terms in the Purchase Agreement.

**2. Guaranty of Obligations:** Guarantor hereby irrevocably, absolutely and unconditionally guarantees to Buyer prompt and complete performance of all of Seller's obligations under the Purchase Agreement. For the avoidance of doubt, Seller is selling a portion of a future revenue stream to Buyer at a discount, not borrowing money from Buyer. Seller's obligations under the Purchase Agreement do not include any absolute obligation to "repay" the Purchased Amount, but rather are limited to various covenants intended to allow Buyer to collect its share of the Future Receipts it purchased as they are generated in the ordinary course of Seller's business, and obligations to pay certain fees and other amounts independent of its generation of Future Receipts.

**3. Guarantor's Other Agreements:** Guarantor will not dispose, convey, sell or otherwise transfer, or cause Seller to dispose, convey, sell or otherwise transfer, any material business assets of Seller without the prior written consent of Buyer, which may be withheld for any reason, until receipt of the entire Purchased Amount. Guarantor hereby agrees to pay all costs and attorney's fees incurred by Buyer in connection with any actions commenced by Buyer to enforce its rights or incurred in any action to defend its performance under the Purchase Agreement and this Guaranty. This Guaranty is binding upon Guarantor, and Guarantor's heirs, legal representatives, successors and assigns. If there is more than one Guarantor, the obligations of the Guarantors hereunder shall be joint and several. The obligation of Guarantor shall be unconditional and absolute, regardless of the unenforceability of any provision of any agreement between Seller and Buyer, or the existence of any defense, setoff or counterclaim which Seller may assert. Buyer is hereby authorized, without notice or demand and without affecting the liability of Guarantor hereunder, to at any time renew or extend Seller's obligations under the Purchase Agreement or otherwise modify, amend or change the terms of the Purchase Agreement. Guarantor is hereby notified that a negative credit report reflecting on his/her credit record may be submitted to a credit reporting agency if the terms of this Guaranty are not honored by the Guarantor.

**4. Waiver; Remedies:** No failure on the part of Buyer to exercise, and no delay in exercising, any right under this Guaranty shall operate as a waiver, nor shall any single or partial exercise of any right under this Guaranty preclude any other or further exercise of any other right. The remedies provided in this Guaranty are cumulative and not exclusive of any remedies provided by law or equity. In the event that Seller fails to perform any obligation under the Purchase Agreement, Buyer may enforce its rights under this Guaranty without first seeking to obtain performance for such default from Seller or any other guarantor.

**5. Acknowledgment of Purchase:** Guarantor acknowledges and agrees that the Purchase Price paid by Buyer to Seller in exchange for the Purchased Amount is a purchase of the Purchased Amount and is not intended to be treated as a loan or financial accommodation from Buyer to Seller. Guarantor specifically acknowledges Buyer is not a lender, bank or credit card processor, and that Buyer has not offered any loans to Seller, and Guarantor waives any claims or defenses of usury in any action arising out of this Guaranty. Guarantor acknowledges the Purchase Price paid to Seller is good and valuable consideration for the sale of the Purchased Amount of Future Receipts.

Initials: DS SZ Initials: DS KZ

6. **Governing Law:** This Guaranty shall be governed by, and constructed in accordance with, the internal laws ofthe State of New York without regard to principles of conflicts of law.

7.
**Dispute Resolution. Guarantor hereby agrees to be bound by the Class Action Waiver, Jury Trial Waiver, and Arbitration provisions set forth in Sections 27 and 28 of the Purchase Agreement. Guarantor shall have the same rights as Seller under these provisions, including without limitation the right to opt out of arbitration.**

SCOTT ZANKL

8. **<u>SERVICE OF PROCESS</u>. IN ADDITION TO THE METHODS OF SERVICE ALLOWED BY THE New York RULES OF CIVIL PROCEDURE, GUARANTOR HEREBY CONSENTS TO SERVICE OF PROCESS UPON IT BY REGISTERED OR CERTIFIED MAIL, RETURN RECEIPT REQUESTED, WITHOUT THE NECESSITY FOR SERVICE BY ANY OTHER MEANS PROVIDED BY STATUTE OR RULE OF COURT, BUT WITHOUT INVALIDATING SERVICE PERFORMED IN ACCORDANCE WITH SUCH OTHER PROVISIONS. SERVICE HEREUNDER SHALL BE COMPLETE UPON GUARANTOR'S ACTUAL RECEIPT OF PROCESS OR UPON BUYER'S RECEIPT OF THE RETURN THEREOF BY THE UNITED STATES POSTAL SERVICE AS REFUSED OR UNDELIVERABLE. GUARANTOR MUST PROMPTLY NOTIFY BUYER, IN WRITING, OF EACH AND EVERY CHANGE OF ADDRESS TO WHICH SERVICE OF PROCESS CAN BE MADE. SERVICE BY BUYER TO THE LAST KNOWN ADDRESS SHALL BE SUFFICIENT. GUARANTOR WILL HAVE (30) CALENDAR DAYS AFTER SERVICE HEREUNDER IS COMPLETEIN WHICH TO RESPOND. FURTHERMORE, GUARANTOR EXPRESSLY CONSENTS THAT ANY AND ALL NOTICE(S), DEMAND(S), REQUEST(S) OR OTHER COMMUNICATION(S) UNDER AND PURSUANT TO THIS AGREEMENT FOR THE PURCHASE AND SALE OF FUTURE RECEIVABLES SHALL BE DELIVERED IN ACCORDANCE WITH THE PROVISIONS OF THIS AGREEMENT FOR THE PURCHASE AND SALE OF FUTURE RECEIVABLES.**

9. **Severability:** If for any reason any court of competent jurisdiction finds any provisions of this Guaranty to be void or voidable, the parties agree that the court may reform such provision(s) to render the provision(s) enforceable ensuring that the restrictions and prohibitions contained in this Guaranty shall be effective to the fullest extent allowed under applicable law.

10. **Opportunity for Attorney Review:** The Guarantor represents that it has carefully read this Guaranty and has, or had a reasonable opportunity to, consult with its attorney. Guarantor understands the contents of this Guaranty, and signs this Guaranty as its free act anddeed.

11. **Counterparts and Facsimile Signatures:** This Guaranty may be signed in one or more counterparts, each of which shall constitute an original and all of which when taken together shall constitute one and the same agreement. Facsimile or scanned documents shall have the same legal force and effect as an original and shall be treated as an original document for evidentiary purposes.

**For Individual Guarantors -**
**Guarantor:** SCOTT ZANKL **(Print Name)**
**Signature:** X DocuSigned by: Scott Zankl 783C464680D2410...

**For Individual Guarantors -**
**Guarantor:** KRISTEN ZANKL **(Print Name)**
**Signature:** X DocuSigned by: KRISTEN ZANKL 2DE1E978605F487...

**For Corporate Guarantors (or other entities) -**
**Guarantor:** EXCELL AUTO GROUP, INC.ET AL SEE ADDENDUM
**By:** X ____________________
**Print Name of Signer:** ____________________
**Its:** ____________________ **(Official Position)**

## Electronic Fund Transfer Authorization

This Electronic Fund Transfer Authorization (the "Authorization") supplements the foregoing concurrent Agreement for the Purchase and Sale of Future Receipts (the "Agreement"). Except as noted below, capitalized terms in this Authorization have the meaning set forth in the Agreement.

Seller irrevocably authorizes Buyer (which includes for the purposes of this authorization, Buyer's agents, service providers, successors, and assigns) to take delivery of each Weekly Delivery Amount by initiating an electronic fund transfer via the Automated Clearing House network or similar network (an "ACH") from the business deposit account specified below, any substitute account Seller later specifies, or any other account containing Seller's Future Receipts (collectively, the "Account") on or after the date the associated Future Receipts were created. Seller authorizes Buyer to initiate a single ACH for the combined amounts of different Weekly Delivery Amounts as permitted by the Agreement. Seller further authorizes Buyer to initiate ACHs to the Account for any amounts that come due under the Agreement, including ACHs permitted upon an Event of Default. Seller also authorizes Buyer to initiate ACH credits or debits to the Account to correct any errors Buyer may make in processing a payment. In the event that an ACH is returned unpaid, Seller authorizes Buyer to reinitiate the ACH until it is paid and to initiate a separate ACH or to add to a reinitiated ACH the amount of any dishonored payment fee that Buyer charges. Seller agrees that Seller will not cancel this Authorization or instruct any depository holding Future Receipts that Buyer purchased to reject Buyer's ACHs. Seller promises that the Account specified below and any substitute Account Seller provides Buyer is used for business purposes and not for personal, family or household purposes and that Seller is an authorized signor on these Accounts.

Transfer Funds To/From:

Name of Bank: [redacted]

ABA Transit/Routing #: [redacted]

Checking Account #: [redacted]

This authorization is to remain in full force and effect until all obligations due to Buyer under the Agreement have been fulfilled.

Seller Information:

Seller's Name: EXCELL AUTO GROUP, INC.ET AL SEE ADDENDUM

Signature of Authorized Representative: DocuSigned by: Scott Zankl

Print Name: SCOTT ZANKL

Title: Pres.

Seller's Tax ID: [redacted]

Date: , 21

This authorization is to remain in full force and effect until all obligations due to Buyer under the Agreement have been fulfilled.

Seller Information:

Seller's Name: EXCELL AUTO GROUP, INC.ET AL SEE ADDENDUM

Signature of Authorized Representative: DocuSigned by: KRISTEN ZANKL

Print Name: KRISTEN ZANKL

Title: vp

Seller's Tax ID: [redacted]

Date: , 2021

DocuSign Envelope ID: 632647CB-0ED1-4B0A-8B03-D08D114CBCD5

**[Attached Voided Check Here]**

Dear Seller,

Please fill out the form below with the access information for your bank account, please write legibly and indicate lower/upper case sensitivity.

Legal Name/ DBA:

Bank portal website: na

Username: na

Password: na

Security Question/Answer 1: na

Security Question/Answer 2: na

Security Question/Answer 3: na

Security Question/Answer 4: na

Security Question/Answer 5: na

Security Question/Answer 6: na

Any other information necessary to access your account: na

DocuSign Envelope ID: 632647CB-0ED1-4B0A-8B03-D08D114CBCD5

TVT CAPITAL

## Stacking Prohibited Addendum

This addendum is made as of December 14, 2021 (the "Addendum") to the Agreement for the Purchase and Sale of Future Receipts between TVT DIRECT FUNDING LLC (the "Buyer") and the ("Seller") dated: December 14, 2021

Whereas, the Buyer desires to draw attention to Section 13.2 of the Agreement ("**Stacking Prohibited**"), which strictly prohibits Seller from entering into any type of financing agreement that relates to or involves its Future Receipts with any other party other than Buyer for the duration of the Agreement.

Seller agrees to the Stacking Prohibited provision of the Agreement, and fully understands that breach of the Stacking Prohibited provision shall constitute an Event of Default.

By signing this Addendum, Seller agrees and fully understands that in the event Seller breaches the Stacking Prohibited provision, Buyer fully reserves its rights to <u>immediately</u> commence collections activities pursuant to Section 16 of the Agreement.

IN WITNESS WHEREOF, each of the undersigned has executed, or has caused to be executed, this Addendum as of the date first written above.

Seller: EXCELL AUTO GROUP, INC.ET AL SEE ADDENDUM

Agreed to by: DocuSigned by: Scott Zankl 763D464660D2410... (Signature), its Pres. (Title)

Print Owner's Name: SCOTT ZANKL

Seller: EXCELL AUTO GROUP, INC.ET AL SEE ADDENDUM

Agreed to by: DocuSigned by: KRISTEN ZANKL 2DE1E978605F487... (Signature), its VP (Title)

Print Owner's Name: KRISTEN ZANKL

Buyer: **<u>TVT DIRECT FUNDING LLC</u>**

Agreed to by: DocuSigned by: Randy Saluck (Signature), Its RS (Title)

Initials: DS SZ Initials: DS KZ

CAPITAL

# Weekly Deliveries Addendum

The Agreement for the Purchase and Sale of Future Receipts dated December 14, 2021 between TVT DIRECT FUNDING LLC ("Buyer") and EXCELL AUTO GROUP, INC.ET AL SEE ADDENDUM ("Seller") is hereby modified as follows:

Buyer will ACH debit $39,722.22 from Seller's Account on a weekly basis, until the Purchased Amount is delivered.

Clause 15(f) in the "Events of Default" section of the Agreement is deleted and replaced with the following: "(f) Seller fails to provide timely notice to Buyer such that an ACH transaction attempted by Buyer is rejected by Seller's bank."

Section 2 of the Agreement, which allows Seller to request changes to the Daily Amount based on changes in its revenue, remains in full force and effect but shall apply to weekly rather than daily ACH amounts.

Seller: EXCELL AUTO GROUP, INC.ET AL SEE ADDENDUM

Agreed to by: DocuSigned by: Scott Zankl 763D464660D2410... its Pres. (TITLE)

Print Owner's Name: SCOTT ZANKL

Seller: EXCELL AUTO GROUP, INC.ET AL SEE ADDENDUM

Agreed to by: DocuSigned by: KRISTEN ZANKL 2DE1E978005F487... its vp (TITLE)

Print Owner's Name: KRISTEN ZANKL

Buyer: **TVT DIRECT FUNDING LLC**:

Agreed to by: DocuSigned by: Randy Saluck (Signature) its RS (Title)

This is an addendum ("Addendum") to the Agreement for the Purchase and Sale of Future Receipts (the "Merchant Agreement") entered into by and among TVT DIRECT FUNDING LLC (the "Buyer"), SCOTT ZANKL (the "Owner") and EXCELL AUTO GROUP, INC.ET AL SEE ADDENDUM (the "Seller") dated as of December 14, 2021.

WHEREAS, the Buyer, the Owner and Seller wish to modify the Merchant Agreement as set forth herein. Now therefore, for good and valuable consideration, the parties agree as follows:

A. The Owner and the Seller are hereafter referred to collectively as the Merchant (the "Merchant").
B. Except as provided below, it is understood and agreed that the Merchant may repurchase Future Receipts sold to the Buyer, but not yet delivered, to end this financing transaction. The Repurchase Price for such early repurchase shall be set forth below, less the amount of any Weekly Deliveries made prior to the date of Repurchase, plus any unpaid fees or charges. Month 1 begins on the Commencement Date. December 14, 2021.
C. Except as provided in this addendum, all terms and conditions of the Merchant Agreement and the Supplement shall remain in full force and effect.
D. This addendum shall be governed by the laws of the state of New York without reference to choice-of-law principles.

| Repurchase Month | Repurchase Price (the amount below LESS Weekly Deliveries collected by Purchaser) |
|---|---|
| 1 | $1,250,000.00 |
| 2 | $1,270,000.00 |
| 3 | $1,300,000.00 |
| 4 | |
| 5 | |

All other terms of the referenced Merchant Agreement remain unchanged.

By their signatures below the parties agreed to be bound by this addendum.

**ACCEPTED AND AGREED:**

**Buyer: TVT DIRECT FUNDING LLC**

By: DocuSigned by: Randy Saluck

Name: Randy Saluck

Title: RS

**ACCEPTED AND AGREED:**

**Seller:**

By: EXCELL AUTO GROUP, INC.ET AL SEE ADDENDUM

Name: SCOTT ZANKL

Title: Pres.

By: DocuSigned by: Scott Zankl 763D454650D2440...,

Owner Name: SCOTT ZANKL

**Seller:**

By: EXCELL AUTO GROUP, INC. ET AL SEE ADDENDUM

Name: KRISTEN ZANKL

Title: VP

By: DocuSigned by: KRISTEN ZANKL 2DE1E978605F487...,

Owner Name: KRISTEN ZANKL

DocuSign

## Certificate Of Completion

Envelope Id: C41CDC4C2FB244B9A7F5F3607A0F9F67
Subject: Please DocuSign: 1M - DIRECT - EXCELL AUTO GROUP, INC.ET AL SEE ADDENDUM
Source Envelope:
Document Pages: 17
Certificate Pages: 5
AutoNav: Enabled
EnvelopeId Stamping: Enabled
Time Zone: (UTC-08:00) Pacific Time (US & Canada)

Signatures: 16
Initials: 28

Status: Completed

Envelope Originator:
Contracts Team
90 Broad St
Suite 16
New York, NY 10004
contracts@tvtcapital.com
IP Address: 69.203.66.162

## Record Tracking

| | | |
|---|---|---|
| Status: Original<br>12/14/2021 11:27:05 AM | Holder: Contracts Team<br>contracts@tvtcapital.com | Location: DocuSign |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Scott Zankl<br>scott@excellauto.com<br>Pres.<br>Excell Auto group<br>Security Level: Email, Account Authentication (None)<br><br>**Electronic Record and Signature Disclosure:**<br>Accepted: 12/14/2021 11:34:18 AM<br>ID: c37b6944-36d4-4a8c-8f44-0f724d316216 | DocuSigned by:<br>Scott Zankl<br>763D464660D2410...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 162.210.206.162 | Sent: 12/14/2021 11:33:58 AM<br>Viewed: 12/14/2021 11:34:18 AM<br>Signed: 12/14/2021 11:35:21 AM |
| KRISTEN ZANKL<br>Kristen@excellauto.com<br>vp<br>Security Level: Email, Account Authentication (None)<br><br>**Electronic Record and Signature Disclosure:**<br>Accepted: 12/14/2021 11:38:13 AM<br>ID: 6d746a14-7879-4392-814b-bc51387b2677 | DocuSigned by:<br>KRISTEN ZANKL<br>2DE1E978605F487...<br><br>Signature Adoption: Pre-selected Style<br>Using IP Address: 162.210.206.162 | Sent: 12/14/2021 11:33:59 AM<br>Resent: 12/14/2021 11:39:18 AM<br>Viewed: 12/14/2021 11:38:13 AM<br>Signed: 12/14/2021 11:39:20 AM |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|
| Contracts Team<br>contracts@tvtcapital.com<br>Chief Executive Officer<br>Cannabusiness Resources LLC<br>Security Level: Email, Account Authentication (None)<br><br>**Electronic Record and Signature Disclosure:**<br>Not Offered via DocuSign | COPIED | Sent: 12/14/2021 11:33:58 AM<br>Resent: 12/14/2021 11:39:24 AM |

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 12/14/2021 11:33:59 AM |
| Certified Delivered | Security Checked | 12/14/2021 11:38:13 AM |
| Signing Complete | Security Checked | 12/14/2021 11:39:20 AM |
| Completed | Security Checked | 12/14/2021 11:39:20 AM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

DocuSign Envelope ID: 632647CB-0ED1-4B0A-8B03-D08D114CBCD5 6 AM
Parties agreed to: Scott Zankl, KRISTEN ZANKL

## ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, TVT Capital, LLC (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

### Getting paper copies

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

### Withdrawing your consent

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

### Consequences of changing your mind

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

### All notices and disclosures will be sent to you electronically

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact TVT Capital, LLC:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: contracts@tvtcapital.com

**To advise TVT Capital, LLC of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at contracts@tvtcapital.com and in the body of such request you must state: your previous email address, your new email address. We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from TVT Capital, LLC**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to contracts@tvtcapital.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with TVT Capital, LLC**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to contracts@tvtcapital.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify TVT Capital, LLC as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by TVT Capital, LLC during the course of your relationship with TVT Capital, LLC.

**STATE OF FLORIDA UNIFORM COMMERCIAL CODE**
**FINANCING STATEMENT FORM**

Florida Secured Transaction Registry

# FILED

2022 Mar 30 12:44 PM

******* 202201005979 *******

A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON
Wolters Kluwer Lien Solutions; (800)331-3282
Email ctlsweback@wolterskluwer.com

B. SEND ACKNOWLEDGEMENT TO:

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (1a OR 1b) - Do Not Abbreviate or Combine Names

| | | | | | |
|---|---|---|---|---|---|
| 1a. ORGANIZATION'S NAME<br>EXCELL AUTO GROUP, INC. | | | | | |
| 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX | | |
| 1c. MAILING ADDRESS Line One<br>1001 Clint Moore Road | This space not available. | | | | |
| MAILING ADDRESS Line Two<br>Suite 101 | CITY<br>Boca Raton | STATE<br>FL | POSTAL CODE<br>33487 | COUNTRY<br>USA | |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (2a OR 2b) - Do Not Abbreviate or Combine Names

| | | | | |
|---|---|---|---|---|
| 2a. ORGANIZATION'S NAME | | | | |
| 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX | |
| 2c. MAILING ADDRESS Line One | This space not available. | | | |
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - INSERT ONLY ONE SECURED PARTY NAME (3a OR 3b)

| | | | | |
|---|---|---|---|---|
| 3a. ORGANIZATION'S NAME<br>C T Corporation System, as representative | | | | |
| 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX | |
| 3c. MAILING ADDRESS Line One<br>330 N Brand Blvd | This space not available. | | | |
| MAILING ADDRESS Line Two<br>Suite 700; Attn: SPRS | CITY<br>Glendale | STATE<br>CA | POSTAL CODE<br>91203 | COUNTRY<br>USA |

**4. This FINANCING STATEMENT covers the following collateral:**

All assets of the Debtor now owned or hereafter acquired and wherever located, including, but not limited to, any and all receivables, equipment, fixtures, inventory, accounts, credit card receivables, chattel paper, documents, instruments, investment property, general intangibles, letter-of-credit rights and deposit accounts, together with any products and proceeds thereof.

5. ALTERNATE DESIGNATION (if applicable)
- ☐ LESSEE/LESSOR
- ☐ CONSIGNEE/CONSIGNOR
- ☐ BAILEE/BAILOR
- ☐ AG LIEN
- ☐ NON-UCC FILING
- ☐ SELLER/BUYER

**6. Florida DOCUMENTARY STAMP TAX** - YOU ARE REQUIRED TO CHECK **EXACTLY ONE** BOX

☐ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.
☑ Florida Documentary Stamp Tax is not required.

**7. OPTIONAL FILER REFERENCE DATA** 85692496-63482040